**DISTRICT OF COLUMBIA, Appellant,**

v.

**Willie L. DAVIS, Appellee.**

No. 95–CV–1512.

District of Columbia Court of Appeals.

Argued Oct. 11, 1996.

Decided Nov. 14, 1996.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, Washington, DC, were on the brief, for appellant.

Betty J. Clark, Washington, DC, for appellee.

Before SCHWELB and REID, Associate Judges, and MACK, Senior Judge.

REID, Associate Judge:

Appellee Willie L. Davis was terminated from the Fire Department's Emergency Ambulance Bureau for insubordination, based on his use of marijuana while off-duty, in violation of Fire Department orders. The Office of Employee Appeals (OEA) sustained the termination. Mr. Davis petitioned the trial court for review, and the trial court concluded that Mr. Davis was not insubordinate within the meaning of the adverse action section of the Comprehensive Merit Personnel Act (CMPA), D.C.Code, § 1–617.1(d) (1992 Repl.). We reverse because (1) the OEA decision was based on substantial evidence, and (2) the agency's construction of the insubordination provision of D.C.Code § 1–617.1(d)(5) required deference because it was reasonable, and not plainly erroneous or inconsistent with the CMPA.

## FACTUAL SUMMARY

At the time of his termination, Mr. Davis was a permanent employee in the Career Service and had been employed as an emergency ambulance technician by the Emergency Ambulance Bureau (EAB) of the District's Fire Department for six years. He failed a departmental drug test on January 26, 1988, when his urine sample tested positive for marijuana. He was temporarily removed from his position, given administrative duties which did not require contact with the public, and sent to a mandatory drug rehabilitation program.

Mr. Davis returned to his regular duties on February 26, 1988. He was required to submit to periodic drug testing. On April 26, 1988, he again tested positive for marijuana use. On May 10, 1988, the Director of the EAB, John M. Cavenagh, sent Mr. Davis written notice of the EAB's intent to terminate his employment, for cause: "Insubordination; to wit: Failure or refusal to comply with written instructions or direct orders by a superior." The notice identified two applicable Fire Department orders: (1) "August 21, 1986, General Order No. 14, New F.D. Bulletin No. 65, Substance Abuse Policy"; and (2) "October 14, 1987, Special Order No. 50, Use of Intoxicant or Illegal Substances."

The charges against Mr. Davis were detailed, as follows:

On May 4, 1988, you were placed on administrative leave with pay until further notice by your supervisor, Edward Foye, Assistant Director of Operations. On April 26, 1988, you visited the Police and Fire Clinic and provided a urine specimen (881336) which was analyzed for drug content. On May 4, 1988, it was confirmed by CompuChem Laboratories, Inc., that the sample was positive for the drug, cannabinoids.

You failed to follow D.C. Fire Department's policy and orders for substance abuse testing, particularly in view of the fact that you tested positive for cannabinoids. On December 4, 1987, you received the substance abuse policy from the Fire Chief, T.R. Coleman. You knew or should have known the Fire Department's intent to prohibit the substance abuse by its employees in the EAB.

According to the notice, Mr. Cavenagh "determined that [Mr. Davis'] conduct constitutes an immediate hazard to the Department, [Mr. Davis], other employees and [to] the detriment of the public's health, safety, and welfare."

Because Mr. Davis took issue with the proposed action, the Department appointed a disinterested designee, pursuant to 16 DPM § 1613, 34 D.C.Reg. 1857 (1987). The disinterested designee, Ms. Joan E. Mendelson, a Fire Department employee, investigated the matter, heard a presentation by Mr. Davis, and spoke with others in the Department. According to Ms. Mendelson's May 16, 1988, written summary of her investigation, Mr. Davis not only failed drug tests on January 26, 1988, and April 26, 1988, but also failed an earlier test on June 11, 1987. As a result of the earlier failure he was placed in a substance abuse program, and did not return to full duty until December 18, 1987. Ms. Mendelson described Mr. Davis' case as "extremely unfortunate" because "Mr. Davis has been with the Department for six (6) years, and has been an excellent employee." Nonetheless, she "concur[red] with the proposal to terminate Mr. Davis from employment with the Department."

Mr. Davis was terminated on May 23, 1988, for "failure to comply with F.D. General Order No. 14 and F.D. Special Order No. 50."[1] He appealed his dismissal to the OEA on June 2, 1988. OEA considered four arguments raised by Mr. Davis: (1) he did not use marijuana on the job, and hence, the EAB could not discipline him; (2) the EAB did not give him adequate notice of the action against him; (3) the drug test results were unreliable, not properly authenticated, and therefore could not serve as evidence for his removal; and (4) EAB's drug testing program is unconstitutional.[2]

During the hearing before an administrative judge on November 6 and 7, 1989, five witnesses testified for the EAB: Mr. Cavenagh, who holds a physician associate degree in medicine and who addressed the disciplinary action taken against Mr. Davis and the reasons for that action; Mr. Tony McMillian, a compliance officer with EAB who testified concerning Mr. Davis' drug tests; Mr. Dean Davis, an employee of the Police and Fire Clinic who detailed the processing of drug test samples; Mr. Gregory Thompson, also an employee of the Police and Fire Clinic who outlined procedures for obtaining an urine sample; and Dr. Mary Jo Fife, a senior technical analyst at CompuChem Laboratories, who discussed the laboratory's procedures for testing an urine specimen for drug content. Mr. Davis did not testify and presented no witnesses.

When asked whether he had "an opinion with regard to their being an inconsistency between the illegal use of drugs by a person employed by the Emergency Ambulance Bureau, and that person's employment as an Emergency Ambulance Technician," Mr. Cavenagh responded:

First, on the patient care level, ... among the responsibilities of an emergency medical technician is the ability to collect information and assemble that information and interpret the meaning of that information. Then based on that interpretation, to provide medical treatment. There are certain clinical conditions that would appear similar to a lay person that require discrimination and differentiation and I'll give you an example of troubled breathing. In some clinical conditions that are manifested by troubled breathing it's required or indicated to administer high levels of oxygen, high concentrations of oxygen. In certain other conditions that are manifested as trouble or difficulty breathing, low concentrations of oxygen should be given. In fact, high concentrations of oxygen if administered to some patients can be dangerous or life-threatening to those patients. So one who may be impaired for whatever reason might not use proper judgment in that situation and could injure a patient.

During cross-examination, Mr. Cavenagh was asked "how long a person would be impaired for marijuana use"? He replied:

There are a variety of durations of affects lasting from hours to days to weeks.... One is called A-motivational syndrome.... It's characterized by lethargy, malaise, loss of interest in activities, loss of ability to concentrate.... That can last for weeks or months.

Mr. Cavenagh also stated that "confusion, disorientation" and the duration of these states would "[vary] according to the level, the amount, the dose, [and] the length to which an individual is exposed to a given dose."

1. General Order No. 14 provides in pertinent part:

It is the intent of the District of Columbia Fire Department to fully protect the safety of the public and members of the Fire Department. Alcohol abuse and/or illegal narcotics or controlled substance use is in direct contradiction to this intent and will not be accepted.... The confirmed finding of an illicit narcotic or controlled substance in the urine of a member ... will result in disciplinary action.

Special Order No. 50 states:

Effective immediately upon receipt of this Special Order, Departmental members shall not place themselves under the influence of intoxicants while on duty; nor use illegal substances in any form while on or off duty, nor report for duty under the influence of intoxicants or illegal substances in or on any property used or occupied by the Fire Department; or use any intoxicant or illegal substance likely to affect their full performance of duty.

2. OEA rejected all of these arguments.

The administrative judge made findings of fact regarding Mr. Davis' drug tests and his participation in mandatory drug rehabilitation programs, as set forth above. She also made detailed findings concerning the EAB's drug testing program and the handling of Mr. Davis' urine samples. The administrative law judge concluded that the EAB drug testing did not violate Mr. Davis' constitutional rights; he received appropriate notice of his proposed termination; no problems existed in the chain of custody regarding Mr. Davis' urine samples; and the EAB's testing procedures were not unfair, and the quantitative level used to determine illegal drug use was appropriate.

The administrative judge focused on Mr. Davis' argument that a Career Service employee can only be terminated for cause and that D.C.Code § 1–617.1(d) can only be interpreted to apply to on-duty drug use, as opposed to off-duty drug use because D.C.Code § 1–617.1(d)(8) specifies, as a cause for termination, "on-duty use of drugs not prescribed and/or illegally obtained," but does not mention off-duty use. Mr. Davis argued that the EAB's use of D.C.Code § 1–617.1(d)(5), "insubordination," as the cause of his termination constituted an attempt to circumvent D.C.Code § 1–617.1(d)(8). The administrative judge distinguished *District of Columbia v. Teamsters Union Local No. 246,* 554 A.2d 319 (D.C.1989), on which Mr. Davis relied, on the ground that there, "insubordination" had not been charged as a basis of termination for cause. In reaching her conclusion, the administrative judge cited "rules and regulations that allow an agency to take corrective or adverse action involving off-duty conduct for [various reasons, including] insubordination, provided there is a showing that the employee's conduct was incompatible with the nature of his or her employment, or had an adverse effect causing discredit to his or her employment, agency or the District government." [3] She determined that "[o]ff-duty use of drugs is incompatible with the nature of [Mr. Davis'] job ... [;][he] used marijuana, violating [the Department's] written orders ...; [and] that such conduct is insubordinate." Because "[the EAB's] penalty cannot be reversed if it is within the applicable range of penalties [set forth in the regulations], and is not so harsh as to amount to an abuse of discretion," the administrative judge issued a recommended initial decision, which upheld Mr. Davis' termination.

A three member reviewing panel of the OEA adopted the recommended initial decision of the administrative judge on March 25, 1993. On May 27, 1994, the full OEA Board issued an opinion and order responding to Mr. Davis' petition for review. In upholding Mr. Davis' termination, the full OEA Board stated, in part:

> Agency's drug policy is not designed simply to affect the conduct of its employees in their off-duty hours. In our view, Agency's drug policy is designed to ensure that any off-duty use of drugs by its employees does not impair their ability to safely perform their jobs. We do not find this policy inconsistent with the intent of the legislature.

> Agency has determined that its employees cannot safely provide emergency medical services unless they are drug free. Agency considers its employees drug free if the level of the THC Acid in their systems is below 10 NG/ml. Although [Mr. Davis] was aware that Agency does not permit its employees to perform their duties unless they are drug free, he nevertheless reported to work with drugs in his system. [Mr. Davis'] refusal to abide by Agency's drug abuse policies was insubordinate and constituted an independent basis for discipline under D.C.Code § 1–617.1(d)(5). Therefore, we see no error in the [administrative judge's] decision to affirm Agency's action.

Mr. Davis petitioned the trial court for review of the decision of the full OEA Board on June 23, 1994. He contended that: (1) under the principle of *expressio unius est exclusio alterius,* the specific inclusion of on-duty drug use as a factor supporting termination for cause, excluded off-duty drug use as a basis of termination; and (2) the Department could not circumvent this principle by relying on "the catch-all clause," "insubordination," as a ground for his termination. The District argued that under the control-

---

3. *See* D.C. Office of Personnel Rule §§ 1603.1(e), and 1603.3, 34 D.C.Reg. 1850–51 (1987).

ling standard of review, OEA's decision was supported by substantial evidence, and was not clearly erroneous as a matter of law.

The trial judge concluded that "while OEA's factual determinations are supported by substantial evidence of record, its decision affirming the action of the Fire Department constitutes an error of law." The trial court deemed the term "insubordination" to "import a wilful or intentional disregard of the lawful and reasonable instructions of the employer," and concluded that because Mr. Davis did not refuse "to go into a drug treatment program after being ordered to do so," he was not insubordinate. Moreover, said the trial court, "[t]hat Davis subsequently had a test which showed a small amount of marijuana in his system is certainly not sufficient to prove insubordination." The trial court went on to note that "the addiction to drugs may be so strong as to amount to a disease, and the power of the individual to cease drug use through a shear act of will power may be minimal or virtually non-existent." Finally, the trial court stated:

> Davis' presumptive use of drugs following his treatment could possibly reflect a wilful and intentional refusal to obey the department's order that he refrain from drug use, or it could reflect that he was nearly powerless to control a long-term, long-established drug addiction. In this case there is no substantial evidence of record to show that Davis' positive drug test, following the treatment program, was an act of wilful and defiant disobedience of departmental orders. Thus, the OEA erred as a matter of law in holding that the mere occurrence of a positive drug test constitutes evidence of insubordination.

The District filed a timely appeal. We reverse.

### ANALYSIS

■ In considering the trial court's review of an OEA decision, "we conduct the identical review that we would undertake if this appeal had been heard initially in this court." *Kegley v. District of Columbia,* 440 A.2d 1013, 1019 (D.C.1982). An agency's findings of fact and conclusions of law must be affirmed if they are supported by substan-

tial evidence. "We will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record." *Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 702 (D.C.1993). Although we are vested "with the final authority on issues of statutory construction," *Harris v. District of Columbia Office of Worker's Compensation (DOES),* 660 A.2d 404, 407 (D.C.1995), "[w]e must defer to an agency's interpretation of the statute which it administers ... so long as that interpretation is reasonable and consistent with the statutory language. The agency's interpretation, therefore, is controlling unless it is plainly erroneous or inconsistent with the statute." *Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C.1996) (quoting *Lenkin Co. Management v. District of Columbia Rental Housing Comm'n,* 642 A.2d 1282, 1285 (D.C.1994)). We refrain from substituting our judgment "in areas of expertise reserved for the agency." *Barry v. Wilson,* 448 A.2d 244, 246 (D.C.1982).

The trial court acknowledged that the "OEA's factual determinations are supported by substantial evidence of record." It reversed the OEA, however, apparently because, it concluded, "there is no substantial evidence of record to show that Davis' positive drug test, following the treatment program, was an act of wilful and defiant disobedience of departmental orders."

■ The District argues that the trial court erred because OEA's interpretation of the CMPA and implementing personnel rules and regulations is entitled to deference since it is not erroneous as a matter of law. Furthermore, the District contends that the decision in *District of Columbia Dep't of Corrections v. Teamsters Union Local No. 246, supra* is distinguishable. In response, Mr. Davis asserts that the trial court correctly held that his use of a small quantity of marijuana did not constitute insubordination; OEA's decision is not entitled to deference because it is "based upon misinterpretations of statutory terms outside the scope of their expertise"; the principle of *expressio unius est exclusio alterius* supports the trial court's judgment; and the "catch-all phrase," "insubordination" does not authorize the De-

partment "to fire an employee for off-duty drug use where the Comprehensive Merit Personnel Act permits adverse action only for on-duty drug use."

We conclude, first, that *Teamsters,* does not control the outcome of this case. In *Teamsters,* we reversed an adverse action based upon the employee's "conviction of simple assault." Although the employee was charged with a felony (assault with a dangerous weapon), he was convicted of a misdemeanor, as a result of his plea of guilty to simple assault. The officer's conviction for assault was based on an altercation over $20 and a bag of heroin. His termination notice only mentioned the assault conviction, not insubordination. However, during an arbitration hearing, his superior "focus[ed] on . . . [his] off-duty fraternization with an ex-inmate, which they said could be 'grounds for insubordination if connected with some wrongdoing.' " *Id.* at 321. We applied the principle of *expressio unius est exclusio alterius* in *Teamsters* because (1) "conviction of a misdemeanor assault" was not one of the causes for termination listed in D.C.Code § 1–617.1(d), but the list included "conviction of a felony"; and (2) there was no "catch-all provision [in D.C.Code § 1–617.1(d) ] permitting adverse actions for any other reason." *Id.* at 324. With respect to the Department of Correction's attempt to rely on insubordination as a basis for the adverse action, we "found no evidence that [the employee] was guilty of any insubordination prior to the . . . incident [that led to his arrest.]" *Id.* at 325. Moreover, his termination notice letter did not contain a charge of insubordination. Nor did the Department of Corrections cite or rely on implementing rules and regulations which define "insubordination." Here, Mr. Davis' termination notice clearly specified "insubordination" as a ground for his removal; "insubordination" is one of the statutory causes for termination of a Career Service employee; and implementing regulations cited by the OEA define insubordination. For these reasons, *Teamsters* does not support Mr. Davis' arguments.

We must determine, next, whether D.C.Code § 1–617.1(d) permits a Career Service employee to be terminated for cause due to insubordination. Clearly it does. D.C.Code § 1–617.1(d)(5) authorizes termination of a Career Service employee for "insubordination." The fact that D.C.Code § 1–617.1(d)(8) empowers an agency to terminate a Career Service employee for "on-duty use of drugs not prescribed and/or obtained illegally" does not bar termination on another of the listed grounds. There is nothing in the CMPA to suggest, even remotely, that the Council of the District of Columbia intended to preclude termination for insubordination based on an employee's failure to follow the directives of an agency's drug policy, solely because use of the illegal drugs took place during an off-duty status.

Since "insubordination" clearly is a ground for termination for cause under the CMPA, we turn next to the meaning of that term. The trial court consulted and relied on BLACK'S LAW DICTIONARY (5th ed. 1979) to define the term as a "wilful or intentional disregard of the lawful and reasonable instructions of the employer." However, the definition of "insubordination" appears in D.C. Office of Personnel Rule § 1618.1: "failure or refusal to comply with written instructions or direct orders by a superior." 34 D.C.Reg. 1865 (1987). Viewing the evidence in the light most favorable to the Fire Department, as we must, we conclude that there is ample evidence in the record of Davis' failure to comply with direct written orders not to use drugs while off-duty. Moreover, even if we focus on "refusal" as a proper definition of "insubordination," nothing in the record suggests that Davis' use of marijuana was inadvertent. Hence, the OEA rationally found that Davis was insubordinate when he refused to obey the lawful directives of the Fire Department.

We turn next to the question of whether Mr. Davis disobeyed Fire Department orders. Mr. Davis was terminated for "failure to comply with F.D. General Order No. 14 and F.D. Special Order No. 50." Special Order No. 50, issued on October 14, 1987, prior to Mr. Davis' May 1988, termination, provided in pertinent part: "Effective immediately upon receipt of this Special Order, Departmental members shall not . . . use illegal substances in any form while on or off

duty, ... or use any intoxicant or illegal substance likely to affect their full performance of duty." This constituted a direct order not to use illegal substances while off-duty or intoxicant or illegal substances likely to impair on-duty performance; no exceptions to the rule were stated in the order. General Order No. 14, published on August 21, 1986, not only specified that the Fire Department would not accept use of illegal narcotics or a controlled substance because of a need to protect the public and members of the Fire Department, but also that "[t]he confirmed finding of an illicit narcotic or controlled substance in the urine of a member ... will result in disciplinary action." When his urine tested positive for marijuana use on January 26, 1988, and April 26, 1988, Mr. Davis disobeyed both the General and Special Orders of the Fire Department.

We consider now whether regulations implementing the CMPA authorize Mr. Davis' termination for insubordination.[4] The requirements for termination on the ground of "insubordination" are set forth in regulations implementing the CMPA. The trial court never mentioned OEA's reliance on these regulations in reaching its decision that Mr. Davis could be terminated for cause under the CMPA. District of Columbia Office of Personnel Rule § 1603.1(e) identifies "insubordination" as a cause for an employee's termination, and § 1603.3 provides:

> Whenever a corrective or adverse action is proposed involving off-duty conduct under ... § 1603.1(e), ... there must be a showing that the employee's conduct was incompatible with the nature of his or her employment, or had an adverse effect causing discredit to his or her employment, agency, or the District government.

34 D.C.Reg. 1851 (1987). Under the table of appropriate penalties set forth in D.C. Office of Personnel Rule § 1618.1, removal was an appropriate penalty. It remains to be determined whether the EAB met its burden of proof in showing that Mr. Davis' off-duty use of marijuana "was incompatible with the na-

ture of his ... employment," within the meaning of § 1603.3 of the Office of Personnel rules.

The OEA administrative judge concluded that "[o]ff-duty use of drugs is incompatible with the nature of [Mr. Davis'] job," and the full OEA Board stated in its decision, "Agency has determined that its employees cannot safely provide emergency medical services unless they are drug free." These conclusions were supported by substantial evidence in the record. Mr. Cavenagh, the Director of the EAB who holds a physician associate degree in medicine, testified that impairment from marijuana use can last "from hours to days to weeks." He discussed the "A-motivational syndrome" that manifests impairment from marijuana use. This syndrome is characterized by "lethargy, malaise, loss of interest in activities, loss of ability to concentrate" and may last "for weeks or months." Mr. Cavenagh cited "troubled breathing cases" as an example of a difficulty that could confront a marijuana-impaired emergency ambulance technician and compromise treatment. Because some of these troubled breathing cases require low concentrations of oxygen, and others require high concentrations, the technician must be alert, not lethargic. Thus, an emergency ambulance technician suffering from loss of ability to concentrate or loss of interest in activities may well endanger persons suffering from troubled breathing. In short, there was substantial evidence in the record to support the OEA's conclusion that Mr. Davis' off-duty use of marijuana, in violation of Fire Department orders, was "incompatible with the nature of his or her employment." In ignoring the substantial record evidence on this point, the trial court erred.

Finally, the trial court erred in focusing on matters never raised in the OEA proceeding by Mr. Davis. He never challenged the Fire Department's determination, which OEA adopted, that employees are "drug free if the level of the THC Acid in their systems is

---

4. The Council intended that the Mayor would promulgate implementing regulations for the CMPA. *See* D.C.Code §§ 1–604.1 and 1–604.4(a). The Mayor delegated his authority to issue rules and regulations to the Director of the

Office of Personnel. *See* Mayor's Order 80–78, February 27, 1980. Final rules governing adverse actions and grievances were published in the D.C. Register on March 20, 1987, at 1845.

below 10 NG/ml." Nor did he argue or attempt to prove that the amount of marijuana which he used did not constitute insubordination. Moreover, he did not contend that he was addicted to marijuana, that his addiction amounted to a disease, or that he had minimal or no power to stop using the drug; or that his entrance into a drug program proved he was not insubordinate. Indeed, Mr. Davis presented no witnesses and no evidence during the OEA hearing before the administrative judge. Consequently, there is no evidence in the record to support the trial court's conclusions.

For the foregoing reasons, we reverse the judgment of the trial court, and hold that OEA's decision upholding the Fire Department's termination of Mr. Davis from his employment as an emergency ambulance technician was based on substantial evidence and was not clearly erroneous as a matter of law.

*Reversed.*