**Crystal FRANKLIN, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**TriCap Management, Inc., et al., Intervenors.**

**No. 97–AA–190.**

District of Columbia Court of Appeals.

Argued Feb. 3, 1998.

Decided April 2, 1998.

Andrew S. Kasmer, Greenbelt, MD, for petitioner.

Donald P. Maiberger, Rockville, MD, for intervenors.

Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before TERRY, STEADMAN and REID, Associate Judges.

REID, Associate Judge:

Petitioner Crystal Franklin appeals from an order of the Department of Employment Services ("DOES") denying her claim for temporary total income replacement, or wage loss benefits under the District of Columbia Workers' Compensation Act of 1979, D.C.Code § 36–301, *et seq.* (1997), upon the ground that she voluntarily terminated her employment for economic reasons.[1] We affirm.

### FACTUAL SUMMARY

Ms. Franklin was employed as a porter with Tricap Management at the Parkway Overlook Apartment Complex in Washington, D.C., from August 16, 1990 until April 7, 1993, when she resigned her employment effective April 12, 1993, in order to take a "better paying job" with "easier dut[ies]." On March 11, 1993, prior to her April resignation, Ms. Franklin experienced "discomfort in her right wrist and swelling and numbness in her right fingers." On April 11, 1993, she

---

1. Ms. Franklin's claim for medical expenses was granted.

sought medical treatment for the persistent pain in her hand and was diagnosed with carpal tunnel syndrome. Her last day of work at Tricap was April 12, 1993, which was also the day she began her new job as a housekeeper at New Hampshire Suites, where Ms. Franklin had worked previously from 1987 to 1989. However, by April 17, 1993, Ms. Franklin's carpal tunnel syndrome rendered her unable to continue work at the new company, as advised by her doctor. Thus, on or about April 20, 1993, she resigned her position with the new employer because of the pain in her hand.

Ms. Franklin applied for temporary total disability and causally related medical expense benefits, pursuant to the Workers' Compensation Act, for the period April 17, 1993 to the present and continuing.[2] Subsequent to a hearing before a DOES examiner, a compensation order was issued granting, in part, and denying, in part, Ms. Franklin's claim for benefits. The hearing examiner found that Ms. Franklin suffered from a cumulative trauma, which arose out of and in the course of her employment with Tricap, but that she "terminated her employment [with Tricap] for personal economic reasons." Based upon that factual finding, the examiner concluded:

> Agency precedent holds that where an employee terminates employment for economic reasons, compensation for subsequent wage loss is not the responsibility of that employer. *See Powers v. District of Columbia Department of Employment Services,* 566 A.2d 1068 (D.C.1989). . . .

> Notwithstanding, claimant is entitled to payment of medical expenses causally related to her work injury as set forth in D.C.Code, as amended, § 36–307.

The compensation order of the hearing examiner was affirmed by the Director of DOES. Ms. Franklin asks this court to review the agency's denial of temporary total disability benefits.

**2.** The record reveals that Ms. Franklin apparently sought benefits only from her previous employ-

## ANALYSIS

Ms. Franklin contends that her claim for temporary total income replacement or wage loss benefits should not have been denied. The sole issue under review is whether the Director's interpretation of the Workers' Compensation Act affirmed by this court in *Powers v. District of Columbia Dep't of Employment Servs.,* 566 A.2d 1068 (D.C.1989), can be applied to the facts of this case. We hold that the agency acted permissibly in determining that *Powers* applies to Ms. Franklin's case. "An agency's findings of fact and conclusions of law must be affirmed if they are supported by substantial evidence." *District of Columbia v. Davis,* 685 A.2d 389, 393 (D.C.1996). "We will not disturb the agency's decision if it flows rationally from the facts which are supported by substantial evidence in the record." *Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 702 (D.C.1993). "Although we are vested 'with the final authority on issues of statutory construction,' *Harris v. District of Columbia Office of Worker's Compensation (DOES),* 660 A.2d 404, 407 (D.C. 1995), [w]e must defer to an agency's interpretation of the statute which it administers . . . so long as that interpretation is reasonable and consistent with the statutory language." *Davis, supra,* 685 A.2d at 393 (quoting *Taggart–Wilson v. District of Columbia,* 675 A.2d 28, 29 (D.C.1996)).

Ms. Franklin claims that she is entitled to wage loss benefits because she sustained a work-related injury, carpal tunnel syndrome, and was "functionally disabled from returning to the usual employment duties and responsibilities of her job." Thus, she asserts that Tricap was "obligated to provide light duty or income replacing benefits." However, as Ms. Franklin admits, the offer of light duty work was not applicable to her case because she left her employment with Tricap almost immediately after her diagnosis. At the time she left Tricap, Ms. Franklin states that she was "unaware of her disability." As such, she argues that "her attempt to commence work with the

er, and not from New Hampshire Suites.

second employer [did] not absolve the first employer of responsibility." Ms. Franklin's argument is unavailing.

In *Powers,* a division of this court sustained the Director's determination that when an employee resigns her employment for reasons not "related to the injury or disability, but for economic reasons to take a better paying job," the causal link between that employee's injury and the employer is thereby severed. 566 A.2d at 1069. In that case, Powers was injured while on his job with the National Geographic Society, and subsequently given light duty work in an effort to accommodate the injury. *Id.* at 1068. After several months, Powers quit his job at the National Geographic in order to take a higher paying job. *Id.* Powers, a short time later, left the new job because his prior work-related injury prevented him from performing his duties. *Id.* We affirmed the Director's decision that Powers was not entitled to disability benefits against the National Geographic because Powers' loss in wages was not due to the injury but to his decision to seek a better salary. *Id.* at 1069.

Here, Ms. Franklin quit her new job about one week after commencing it. DOES applied its previously adopted principle, affirmed in *Powers,* to Ms. Franklin's case. While this is a closer case than *Powers,* we cannot say, on the record before us, that DOES misapplied *Powers.*[3] Ms. Franklin's decision to quit her job with Tricap and begin a new job with New Hampshire Suites, where she had worked previously, arose entirely out of her motivation to gain a higher salary. She asserts that when she left her employment with Tricap, she was "unaware of her disability." However, she was diagnosed with carpal tunnel syndrome on April 11, the day before she left her job at Tricap;

and she had experienced "discomfort in her right wrist and swelling and numbness in her right fingers" before tendering her resignation on April 7. "Thus, at the time [Ms. Franklin] decided to resign, [s]he occupied the same position as any other employee who voluntarily determines to leave his or her employment." *Id.* at 1069. Under such circumstances, and in light of this court's decision in *Powers, supra,* the DOES decision to deny Ms. Franklin's claim for disability wages flowed rationally from the facts which were supported by substantial evidence in the record. We are mindful that "[o]ur task is not to substitute our judgment for that of the agency," *McKinley v. Dep't of Employment Servs.,* 696 A.2d 1377, 1386 (D.C.1997), particularly in areas of an agency's expertise. *See Davis, supra,* 685 A.2d at 393.

Accordingly, for the foregoing reasons, we affirm the agency's decision.

*So ordered.*

STEADMAN, Associate Judge, dissenting:

Both the hearing examiner and the Director summarily applied *Powers* as controlling without analysis. However, I can perceive possibly significant differences between the employee in *Powers* and petitioner here.

In *Powers,* the employee was fully aware of the nature of his work-related disability, and his employer had made accommodation for him so that he was suffering no wage loss. In other words, at the time he chose to leave employment, Powers was in a sense being "compensated" for lost wages as a result of his work-related disability. In the case now before us, the record is somewhat unclear as to exactly what petitioner's scienter was as to her disability situation when she left the employer, and no existing accommodation had been made by the employer

---

3. Professor Larson raises the question as to whether the result in these cases should "be different because of [a] brief tenure on the new job." 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 57.62 (1997). He responds:

> There is no easy answer to this kind of question. On the one hand, if the intervening job had continued only a few days, it would seem unconscionable to deny compensation. On the other hand, if a worker has become

established in a new line of work, there obviously must be a limit beyond which he cannot reach back and claim disability because of the impossibility of going back to his original disabling job.

*Id.* However, Professor Larson also states: "[t]he number and variety of reasons for quitting are almost unlimited, but the issue remains the same: was the disability in any significant degree a factor in the decision to resign?" Larson, § 57.64(b).

which she voluntarily chose to give up. Additionally, petitioner had only spent several days at her new job when she was told that she could no longer work, unlike Powers who spent a number of weeks. Nowhere does the agency address these distinctions and comment on whether they are material to the outcome of the case. *See* 4 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 57.62 (1997), *quoted in* majority opinion, *supra* note 3.

Deference to agency interpretations of the statutes which they administer is, of course, a hallmark of our jurisprudence. However, it is reasonable to expect that such agency interpretations be supported by appropriate analysis and consideration. *See, e.g., Coumaris v. District of Columbia Alcoholic Beverage Control Bd.*, 660 A.2d 896, 899–902 (D.C. 1995). Here, I am concerned that the agency, without sufficient consideration of factual and potentially legal differences, may have too readily applied a judicial decision that was, itself, simply deferring to an agency interpretation. I would therefore remand for further agency explication of its position, including any additional fact-finding that may be deemed relevant.