**Mark W. KRAUSE, Petitioner,**

v.

**DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.**

**Dynalectric Company and National Union Fire Insurance Company, Intervenors.**

**No. 02–AA–725.**

District of Columbia Court of Appeals.

Argued May 15, 2003.
Decided June 12, 2003.

Joseph H. Koonz, Washington, DC, for petitioner.

Donald P. Maiberger, Rockville, MD, for intervenors.

Arabella W. Teal, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

The Director of the District of Columbia Department of Employment Services, reversing a decision of a hearing examiner, denied petitioner workers compensation benefits on the strength of this court's decisions in *Franklin v. District of Columbia Dep't of Employment Servs.,* 709 A.2d 1175 (D.C.1998), and *Powers v. District of Columbia Dep't of Employment Servs.,* 566 A.2d 1068 (D.C.1989), both standing for the principle that "there is no right to compensation benefits when an employee resigns, not for reasons related to the injury or disability, but for economic reasons to take a better paying job." *Id.* at 1069. The Director, though, failed to address a seemingly pivotal distinction cited by the examiner between those cases and this one: that although petitioner quit his limited-duty job with the employer to take a better paying job elsewhere, his wages—both before he resigned and after he began the new employment—were still below what he had earned before his work-related injury.

This court defers to an agency's interpretation of the statute it administers "so long as that interpretation is reasonable and consistent with the statutory language." *Franklin,* 709 A.2d at 1176 (quotations and citations omitted). *Franklin* and *Powers* both rested upon such deference to the Director's determination of when, under the Workers' Compensation Act (WCA), an employee's resignation severs the causal link between a compensable injury and a subsequent wage loss. But a qualifier to the rule of deference is that a court may reasonably expect such agency interpretations to be supported by appropriate analysis and consideration. *See Munson v. District of Columbia Dep't of Employment Servs.,* 721 A.2d 623, 626–27 (D.C.1998); *Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,*

660 A.2d 896, 899–902 (D.C.1995). The danger in the present case is that the Director, "without sufficient consideration of factual and potentially legal differences, may have too readily applied ... judicial decision[s]"—*i.e.,* Franklin and *Powers*—"that [were themselves] simply deferring to an agency interpretation." *Franklin,* 709 A.2d at 1178 (Steadman, J., dissenting). In applying those decisions as he did, the Director has adopted what appears to be an unwavering rule that when an employee resigns from a job to take a better paying one elsewhere—whether or not the employee's wages ever reach his pre-injury level—this severs all connection between an injury and a resulting wage loss. Our review function, restricted though it is, requires us to insist that the Director provide a better explanation of how that rule is compatible with the text and purposes of the WCA. We therefore vacate and remand for further consideration.

## I.

Krause, the employee/petitioner, worked as an electrician for intervenor (Dynalectric) until October of 1986 when he injured his back while at work. After surgery, he returned to work with Dynalectric in March of 1988 [1] in a modified-duty capacity as an assistant project manager.[2] Before the injury, his salary with Dynalectric av-

eraged about $49,000 a year; his post-injury salary averaged some $23,000. In March of 1989, Krause quit Dynalectric to take a position as an estimator/planner with another employer, Burns & Roe. That job, which also was within his medical restrictions, paid more than his post-injury position with Dynalectric, but still less than he had earned as an electrician.[3] After working for Burns & Roe for some four and a half years, Krause was laid off due to a reduction in force. Thereafter, when he found work with various other employers, he earned more than he would have been paid by Dynalectric in the modified-duty job, but less than what he had earned as an electrician before his work-related injury. At the same time, he underwent significant periods of unemployment, including one period of over a year.

## II.

Reversing a contrary decision by a hearing examiner, the Director denied Krause workers compensation reflecting the difference between his pre-injury wages and his subsequent earnings. Relying on *Powers* and *Franklin, supra,* the Director reasoned simply:

> Where an employee terminates employment for economic reasons, compensation for subsequent wage loss is not the responsibility of that employer ....

**1.** Both parties agree that Krause returned to work in a light-duty position with Dynalectric in March of 1988; however, this date appears to conflict with Krause's Exhibit No. 1 (Wage Loss Spreadsheet). That discrepancy can be resolved on the remand we order in this case.

**2.** The restrictions on his activity, including no repetitive bending, stooping, or significant lifting, and no prolonged sitting or standing, prevented him from resuming his job of electrician.

**3.** Just how much less is not clear. The findings of fact by the examiner fail to calculate

the exact difference between Krause's post-injury wages at Dynalectric and his wages at Burns & Roe and the other companies that have employed him since his resignation from Dynalectric. This information might be gleaned from Krause's Exhibit No. 1, but again, some of the data in that exhibit seems to contradict the factual summaries provided in the briefs of the parties. While the correct amount may have to be determined eventually, neither party disputes that the pay at Burns & Roe did not equal or exceed Krause's pre-injury wages.

Based on the evidence of record, there is no dispute that Claimant sever[ed] his employment with Employer, Dynalectric for economic reasons, a better paying job. Claimant's decision to leave Dynalectric was voluntary and not related [to] his work injury. There is no evidence that the disability was a factor in Claimant's decision to sever the employment with Dyn[a]lectric. Thus, the Director is not persuaded [by] claimant's argument that a departure from *Powers* and *Franklin* is warranted under the facts of this case.

## III.

■ In *Powers* and *Franklin*, we sustained the Director's denial of benefits on the ground that in each case the employee's decision to leave his present job for a better paying one "voluntarily entail[ed] a risk of wage diminution as a result of subsequent events," and thus "[severed] any causal link" between his work injury and the subsequent loss of wages. *Powers*, 566 A.2d at 1069; *Franklin*, 709 A.2d at 1177. Each of those cases, however, differed from the present one in a factual respect that appeared important then—but seemingly not now—to the Director's analysis. The claimant in *Powers*, as the court stated, had

suffered a back injury at work and could no longer perform all the duties required by his old job with the National Geographic Society. Nevertheless, the Society retained him in a light-duty job *at his former wage level*. Several months later the employee resigned in order to take a higher-paying job with the U.S. Postal Service. After a few weeks, he quit because the duties of the new job were too rough on his injured back. The Society refused to rehire him.

566 A.2d at 1068 (emphasis added). The Director's denial of workers compensation focused on Powers' financial situation after the injury. The WCA, we explained, "defines 'disability' as incapacity because of injury which 'results in the loss of wages.' " *Id.* at 1068–69 (quoting former D.C.Code § 36–301(8) (1988)).[4]

The Director reasoned that *since subsequent to the injury Powers was receiving from the Society the same wages as at the time of the injury,* he was suffering no "loss of wages" on account of the injury and hence was not "disabled" within the meaning of the Act. Thus, at the time Powers decided to resign, he occupied the same position as any other employee who voluntarily determines to leave his or her employment. Furthermore, the Act provides that "if an employee voluntarily limits his income … then his wages after becoming disabled shall be deemed to be the amount he would earn if he did not voluntarily limit his income." D.C.Code § 36–308(3)(V), (5).[5] Powers' departure from his job with the Society, voluntarily entailing a risk of wage diminution as a result of subsequent events, was considered as falling within this general principle.

*Id.* at 1069 (emphasis added).

In *Franklin,* the situation was only nominally different, and both the Director and the court saw the case as a fairly straightforward application of *Powers*. See *Franklin,* 709 A.2d at 1176. Before leaving her job "to take a 'better paying job' with 'easier duties,' " the employee had experienced symptoms of and was diagnosed with carpal tunnel syndrome, *id.* at 1175–76, but had not been absent from work and thus suffered no loss of wages until she began her new job (with a new employer) and the injury became disabl-

---

4. Now D.C.Code § 32–1501(8) (2001).

5. Now D.C.Code § 32–1508(3)(V)(iii).

ing. In response to her claim that the original employer (Tricap) was obliged to provide her with light duty work or income-replacing benefits, we explained—in keeping with the Director's analysis—that the option "of light duty work was not applicable to her case because she left her employment with Tricap almost immediately after her diagnosis." *Id.* at 1176. Also, since she had experienced no wage loss, her decision to resign "arose entirely out of her motivation to gain a higher salary" rather than, even partly, from the disabling effects of an injury: "'at the time [Ms. Franklin] decided to resign, [s]he occupied the same position as any other employee who voluntarily determines to leave his or her employment.'" *Id.* at 1177 (quoting *Powers,* 566 A.2d at 1069).

Unlike the claimant in either *Franklin* or *Powers,* Krause suffered an injury *and* a resulting wage loss before he left Dynalectric to take a better paying job elsewhere, and that job left him still earning less than he had earned as an electrician before his injury. Thus it is not immediately apparent how his decision alone to leave Dynalectric "[severed] the causal link between [his] injury and the [original] employer" as in both those cases. *Franklin,* 709 A.2d at 1177; *see Powers,* 566 A.2d at 1069 (upon employee's resignation "for reasons [un]related to the injury or disability, ... any causal link is .. severed"). According to the intervenors, the Director in this case correctly viewed *Powers* as making "the circumstances prior to the [employee's] resignation" irrelevant. *See* Brief for Intervenors at 9 ("[T]he *Powers* Court ... instead, looked forward, and correctly reasoned that, at the instant of resignation, the claimant transformed himself into a fit employee desiring to leave

his employment."). But not only does this appear inconsistent with *Powers, see* 566 A.2d at 1069 (following the injury but before he resigned, Powers was not disabled "since ... [he] was receiving from the [employer] the same wages as at the time of the injury"); a focus strictly on the act of resigning ignores the continued partial disability—an injury-related wage loss—of an employee like Krause who has not regained his pre-injury wage level despite a better paying job with a new employer. The intervenors further argue that at no time has Krause "suggested that he could not, because of his back condition, physically tolerate the demands of the assistant manager position [with Dynalectric]" (Brief for Intervenors at 11); but this appears to highlight the wrong fact,[6] because the modified-duty position *itself* reflected a partial disability that, while ameliorated, was not overcome when Krause took a new job paying more than it did but still less than he had earned as an electrician before the injury.

As stated earlier, *Powers* and *Franklin* both sustained as reasonable interpretations of the WCA the Director's conclusion that on the facts of those cases the employee's resignation was "voluntary"—*i.e.,* done "for economic reasons [unrelated to the injury or disability]," *Powers,* 566 A.2d at 1069—and so relieved the employer of further responsibility for the work-related injury. In this case, however, without acknowledging the key factual distinction discussed above, the Director has relied on those decisions to hold flatly that Krause's resignation from Dynalectric "for ... a better paying job" disqualified him from receipt of further benefits. Fidelity to the statutory definition of disability, but at the same time a proper respect for the Di-

---

**6.** The Director too seems to have focused merely on whether Krause could perform his limited-duty job in stating that "[t]here is no evidence that the disability was a factor in Claimant's decision to sever the employment with Dyn[a]lectric."

rector's function, requires that we vacate this determination and remand for a decision supported by appropriate analysis and consideration, *see Munson,* 721 A.2d at 626–27, one taking into account the circumstantial differences between this case and *Powers* and *Franklin.*[7]

*So ordered.*

---

**7.** We express no opinion, of course, on the ultimate question of Krause's entitlement to benefits, including as it relates to periods when he was *unemployed* after leaving Dyna-

lectric. *See Powers,* 566 A.2d at 1069 (claimant's departure from original employer "voluntarily entail[ed] a risk of wage diminution as a result of subsequent events").