*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-AA-1112

SANTINO QUARANTA, PETITIONER,

V.

DISTRICT OF COLUMBIA
DEPARTMENT OF EMPLOYMENT SERVICES,
RESPONDENT,

and

D.C. UNITED and GREAT DIVIDE INSURANCE CO.,
INTERVENORS.

On Petition for Review of an Order of the
Compensation Review Board
(CRB-085-19)

(Argued March 30, 2021                        Decided October 27, 2022)

*Benjamin T. Boscolo* for petitioner.

*Sheryl A. Tirocchi* for intervenors.

*Karl A. Racine*, Attorney General for the District of Columbia, with whom *Loren L. AliKhan*, Solicitor General at the time, *Caroline S. Van Zile*, Principal Deputy Solicitor General at the time, and *Carl J. Schifferle*, Deputy Solicitor General, filed a Statement in Lieu of Brief based on the decision and order of the Compensation Review Board.

Before MCLEESE and DEAHL, *Associate Judges*, and KRAVITZ, *Associate Judge, Superior Court of the District of Columbia.*∗

DEAHL, *Associate Judge*: Santino Quaranta sought to modify a compensation order denying him wage-loss disability benefits. He claimed that he had experienced a change of condition concerning his "degree of disability," owing to a worsening of his symptoms, sufficient to warrant such a modification. *See* D.C. Code § 32-1524(a). He requested an evidentiary hearing on the matter. A Department of Employment Services Administrative Law Judge dismissed his application, concluding that Quaranta had not made the threshold factual showing that a change in condition has occurred to entitle him to such a hearing. *See Snipes v. D.C. Dep't of Emp't Servs.*, 542 A.2d 832, 834-35, 834 n.4 (D.C. 1988). The Compensation Review Board (CRB) affirmed, and Quaranta now petitions this court for review. For the following reasons, we affirm.

## I.

Santino Quaranta played professional soccer for D.C. United for about eight years: first from 2001 to 2006, and then again from 2008 to 2011. During a match in 2010, he "went blank" and suffered a concussion when a ball struck the right side

---

∗ Sitting by designation pursuant to D.C. Code § 11-707(a).

of his head. A year later, he sustained a more severe concussion when a teammate accidentally elbowed him in the head during practice. These injuries caused Quaranta to miss several games, but he ultimately returned to play the final few months of the 2011 season, after which his contract with D.C. United expired. While D.C. United did not offer to renew Quaranta's contract for the 2012 season, he had offers from "five or six" clubs to sign him at a comparable salary. Notwithstanding those offers, in 2012 Quaranta opted to retire from professional soccer and pursue other ventures, including co-founding the Pipeline Soccer Club, where he coached and currently serves as vice president.

Two years later, in 2014, Quaranta filed a claim for permanent partial disability (PPD) benefits. He contended that he suffered from post-concussive symptoms that precluded him from playing professional soccer and "at times may be debilitating and prevent him from performing his job" with Pipeline. As support for his claim, he produced an April 30, 2013, report from his treating physician, Dr. Kevin Crutchfield, noting that Quaranta "still gets intermittent dizziness and unsteadiness with headaches." He also provided an April 8, 2014, report from Dr. Crutchfield, opining that Quaranta's head injuries "have led to a chronic recurrent inflammatory condition of the occipital nerve." At that time, Dr. Crutchfield recommended a series of "trigger point" steroid injections and, if the steroid

injections proved unsuccessful, a "simple" occipital nerve release procedure. This 2014 claim was denied on the basis that Quaranta had voluntarily retired for reasons unrelated to his head injuries, and so could not recoup the salary he voluntarily walked away from. *See* D.C. Code § 32-1508(3)(V)(iii). The CRB affirmed, as did this court. *Quaranta v. D.C. Dep't of Emp't Servs.*, No. 17-AA-195, Mem. Op. & J. at 5-6 (D.C. Apr. 20, 2018) (*Quaranta I*).

A year later, in 2019, Quaranta applied for a modification of the compensation order denying benefits, claiming a "change of conditions." *See* D.C. Code § 32-1524(a). His application stated that he was again seeking permanent partial disability benefits, with little explication. Intervenors D.C. United and Great Divide Insurance Company requested a *Snipes* hearing, which is a preliminary hearing where the applicant bears the burden of producing evidence demonstrating a "reason to believe that a change of conditions" warranting an award modification has occurred. *Snipes*, 542 A.2d at 835. A hearing before a Department of Employment Services Administrative Law Judge followed.

During the *Snipes* hearing, as evidence of a change in condition, Quaranta submitted a report and referral that Dr. Crutchfield completed after a June 19, 2019, visit. It looked much like the 2013 and 2014 reports that Quaranta submitted in

support of his initial claim. Namely, the 2019 report indicated, like the prior reports, that Quaranta continued to experience headaches, dizziness, and other symptoms. The 2019 report, like the ones years before, also recommended an "occipital nerve release procedure if" Quaranta was not responsive to the steroid injections, and it included a referral to a doctor for that potential procedure. Beyond Dr. Crutchfield's report, Quaranta made a proffer of facts about his condition as of the hearing date. The proffer was brief and follows (as recounted by his counsel) in its entirety:

> Mr. Quaranta is here, and I'll proffer to testify that over the last few years his post-concussion or cervico-cranial symptoms have deteriorated to the point where even his sedentary work at the computer, anything with lots of stimulus, whether it's loud noise, loud sound, too many things going on around the same time, causes a recurrence of his symptoms. At this point, he's not even capable of playing soccer recreationally, which is a change in condition from 2018 and it's on the basis of both medical change in condition and his abilities in the workplace, in the job that he's doing now, that have caused us to file this application for a change in condition.

There was no mention of Quaranta suffering any wage loss in his post-soccer career due to his recurring symptoms, or any forecast of such a diminution in salary. While his counsel at one point supplemented the proffer by implying that Quaranta would elect the surgery recommended by Dr. Crutchfield (which he had apparently forgone in the years since it was first suggested), there was no mention in Dr. Crutchfield's report or Quaranta's proffer of the surgery involving a recuperation

period that would cause him any wage loss. Quaranta asked that the modified period of disability begin running as of about a month earlier, from his June 2019 visit with Dr. Crutchfield, when he received some treatment ("steroid injections with occipital nerve blocks") and was prescribed some medications. Quaranta also orally amended his PPD benefits claim to one for *temporary* partial disability ("TPD") benefits, with the explanation that "[p]erhaps the surgery will completely resolve [Quaranta's] symptoms . . . [we] don't know."

ALJ Gwenlynn D'Souza rejected Quaranta's request for an evidentiary hearing and dismissed his application. The ALJ opined that Dr. Crutchfield's 2019 medical report was "in substance . . . no different" than his 2014 medical report, so Quaranta failed to meet his evidentiary burden of demonstrating changed conditions. She further opined that the "law of the case" established that Quaranta's "post-concussion injuries did not cause wage loss after" he voluntarily took a lower paying job.

Quaranta again sought review by the CRB. In his application for review, he stressed that he was no longer seeking PPD benefits (as in the prior action), but TPD benefits for a "[distinct] period of temporary disability occasioned by the deterioration of his physical symptoms." He also highlighted that he was now

electing the surgical procedure that he had previously rejected, as more evidence of a change in condition. Quaranta further noted that the ALJ did not even mention his factual proffer in her roughly one-page ruling, leading him to conclude that she "gave no consideration to his proffered testimony." The CRB affirmed. While it agreed with Quaranta that the ALJ erred in not expressly referencing his factual proffer, it declined to infer from that omission that she did not consider it. Regardless, the CRB found that the error was harmless, because it was "law of the case" that "the causal link between [Quaranta's] work injury and his new claim for wage loss occurring in 2019 has been severed." Quaranta now petitions this court for review of that decision.

## II.

This court plays a "limited role" in reviewing workers' compensation decisions of the CRB. *Hawk v. D.C. Dep't of Emp't Servs.*, 244 A.3d 1018, 1021 (D.C. 2021) (citation omitted). We will uphold the CRB's ruling so long as "'substantial evidence' supports each factual finding and its legal conclusion 'flows rationally' from those findings," *D.C. Pub. Schs. v. D.C. Dep't of Emp't Servs.*, 262 A.3d 213, 219 (D.C. 2021) (citation omitted), and reverse "only if we conclude that

the decision was arbitrary, capricious, or otherwise an abuse of discretion and not in accordance with law," *Hawk*, 244 A.3d at 1021 (citation omitted).

We agree with the ALJ and the CRB that the wage-loss claim Quaranta presented to them is precluded by the law of the case. *Lynn v. Lynn*, 617 A.2d 963, 969 (D.C. 1992) ("It is the 'law of the case' principle which precludes reopening questions resolved by an earlier appeal in the same case."). In reaching that conclusion, it is important to understand just what Quaranta's claim was before the agency, and what it was not, because it has since morphed considerably on appeal (as discussed below).

In order to justify the modification of a compensation order that Quaranta sought, he had to provide some threshold "reason to believe that a change of conditions ha[d] occurred which raises issues concerning . . . [t]he fact or the degree of disability." D.C. Code § 32-1524(a). That is not an exacting standard, but it does require an applicant to produce evidence or at least a proffer "which could establish, if credited, changed conditions" that might alter their disability award. *Bowser v. D.C. Dep't of Emp't Servs.*, 129 A.3d 253, 258 (D.C. 2015), *as amended* (Feb. 25, 2016). A disability, as that term is used in the Workers' Compensation Act, is an economic concept—it refers to an "injury *which results in the loss of wages*." D.C.

Code § 32-1501(8) (emphasis added).  So, in short, Quaranta was required to come forward with some evidence (or proffer) that he had suffered (or would suffer) some relevant wage loss beyond what had already been resolved against him in his prior case.  He failed to do that.

Quaranta never claimed before the ALJ that he had suffered a relevant wage loss since he retired from professional soccer, i.e., that his salary with Pipeline Soccer Club had been or would be diminished as a result of his post-concussive symptoms.  While he did assert that certain aspects of his current job had "cause[d] a recurrence of his symptoms," the symptoms themselves are not compensable, and he made no assertion that those recurring symptoms led to any loss in wages.[1]  To the extent he was seeking to recoup the diminution of salary that he voluntarily visited upon himself when he retired from professional soccer—which is the only

---

[1] For the first time at oral argument, Quaranta's counsel asserted that Quaranta missed "some limited period of time right after the injection," in an apparent reference to Quaranta missing work after the June 19, 2019, steroid injections.  There was no evidence, or proffered evidence, of that before the ALJ, nor was there so much as a claim (even at oral argument) of any attendant wage loss.  So we disregard that assertion.  There was also the vague assertion in Quaranta's proffer that his symptoms affected "his abilities in the workplace," but that is no different from his evidence in the prior action, that his post-concussive symptoms "at times may be debilitating and prevent him from performing his job" with Pipeline.  Thus, that alone cannot supply the requisite evidence of a change in condition, because it is no change at all.

wage loss there is evidence of—that claim was clearly precluded by the law of the case. *Quaranta I*, Mem. Op. & J. at 5-6.

Quaranta now rebrands the claim he raised before the agency. While it is not entirely clear from his brief, by the time of oral argument Quaranta's claim had morphed into one for temporary *total* disability (TTD) benefits, neither the PPD nor the TPD benefits he sought from the agency. Perhaps to address the deficiency with his prior claims, Quaranta's position at oral argument was that he will be entirely without wages as he recovers from the anticipated occipital nerve release procedure, and it is for that period that he should be able to recoup his lost wages as TTD benefits.[2]

That might be a viable wage-loss claim if what Quaranta seeks to recover is only the amount by which his already-voluntarily-reduced wages from Pipeline are further diminished as a result of an upcoming surgery, rather than what he would

---

[2] Claims for disability benefits covering recuperation periods tend to seek TTD benefits, which contemplate a claimant who will lose all wages for a temporary period. *See, e.g.*, *Battle v. D.C. Dep't of Emp't Servs.*, 176 A.3d 129, 131-32 (D.C. 2018); *Children's Def. Fund v. D.C. Dep't of Emp't Servs.*, 726 A.2d 1242, 1244-45 (D.C. 1999).

have made as a professional soccer player.[3]   But we do not confront that question here because: (1) there is nothing in the record, including the proffer, that Quaranta would in fact suffer such a wage loss,[4] and (2) this theory of TTD disability benefits is a new one and was never argued before the agency.  *See Cannon v. Igborzurkie*, 779 A.2d 887, 888 (D.C. 2001) ("Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision

---

[3] Quaranta has never specified what he believes the baseline for his wage-loss claim is, be it his D.C. United salary or his reduced Pipeline salary.  Assuming he is seeking to recover only his losses as measured against his Pipeline salary, that would raise a tricky legal question.  We have at least one precedent suggesting that once an employee voluntarily leaves an employer for reasons unrelated to an injury, they have forever "severed" the "causal link" with that employer, even if an injury suffered under their former employer causes a subsequent diminution of salary with a new employer (an involuntary diminution of the voluntarily diminished wages, as it were).  *Franklin v. D.C. Dep't of Emp't Servs.*, 709 A.2d 1175, 1177 (D.C. 1998).  But we would be reticent to read *Franklin* to support so broad a proposition, because it is rather counterintuitive; one would think an employee could recover any amounts that stemmed from their injury, i.e., the amounts beyond what they voluntarily relinquished.  To foreclose such a recovery would be particularly surprising in the context of the Workers' Compensation Act's "remedial" and "humanitarian" purposes, *Poole v. D.C. Dep't of Emp't Servs.*, 77 A.3d 460, 468 (D.C. 2013), where we apply a "presumption" of compensability for work-related disabilities, *Upchurch v. D.C. Dep't of Emp't Servs.*, 783 A.2d 623, 627 (D.C. 2001).  Ultimately, we have no cause to resolve this question, because Quaranta never so much as asserted before the agency that he had suffered or would suffer any wage loss at Pipeline.

[4] At oral argument, counsel stated that his proffer included that Quaranta would be out of work (and, perhaps one could infer from that, wages) as he recovered from the anticipated surgery.  Counsel was mistaken; his proffer to the ALJ contained no such claim.

to indicate distinctly the party's thesis, will normally be spurned on appeal." (citation omitted)).

In fact, this late-breaking claim for TTD benefits runs contrary to how Quaranta's counsel argued his claim before the agency. Recall that, at the *Snipes* hearing, counsel orally amended the original request for PPD benefits to one for TPD benefits, running from about a month earlier (his June 19, 2019, visit with Dr. Crutchfield). Counsel's explanation for that shift was that he "[did]n't know how the surgery is going to go. Perhaps the surgery will completely resolve the symptoms . . . ." Far from seeking TTD benefits for a limited recuperation period— what counsel described as "the gravamen" of his claim at oral argument before this court—the transcript makes clear that counsel was seeking only *partial* benefits for a period beginning months before any anticipated surgery, and potentially in perpetuity unless Quaranta's symptoms remitted. He never sought *total* disability benefits at all. Put simply, Quaranta never alerted the ALJ or the CRB to the claim that he now presses for the first time on appeal.

On the limited questions that were presented to the agency, the ALJ was correct that Quaranta failed to meet his threshold evidentiary burden of providing reason to think changed conditions would justify a modification of the underlying

compensation order.  He neither presented nor proffered any evidence of wage loss after his voluntary retirement from professional soccer.  Like the CRB, we conclude the ALJ's failure to expressly consider Quaranta's proffer was harmless, both because (1) even taking the proffer into account, there was no evidence of wage loss beyond the one Quaranta visited upon himself when he retired from professional soccer, and (2) as to that wage loss, the CRB was correct that the law of the case and our precedents foreclose any claim that Quaranta might have to recover those wages.

The order of the Compensation Review Board is affirmed.

*So ordered*.