Ronald A. HUTCHINSON, Appellant,

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, Appellee.**

No. 96–CV–87.

District of Columbia Court of Appeals.

Argued Nov. 13, 1997.
Decided April 30, 1998.

Frederic W. Schwartz, Jr., Washington, DC, for appellant.

Sheila Kaplan, Assistant Corporation Counsel, with whom Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before STEADMAN and FARRELL, Associate Judges, and NEWMAN, Senior Judge.

STEADMAN, Associate Judge:

Appellant Ronald A. Hutchinson lost his job with the District of Columbia Fire Department after he allegedly failed to enter an emergency 911 call into the Department's computer system. An administrative judge at the Office of Employee Appeals ("OEA") determined that the Department acted properly in firing Hutchinson. Appellant filed a petition for review with the full OEA, which was denied, and then filed a petition for review with the Superior Court, which also was denied. We affirm.

## I.

### A. *The 911 Call.*

Hutchinson worked as a fire communications operator with the District of Columbia Fire Department. His responsibilities included answering emergency 911 calls and entering the incoming information into the Department's computer system so that ambulances could be dispatched as appropriate. On the afternoon of May 25, 1990, a caller spoke with Hutchinson and requested an ambulance for a woman suffering from symptoms of hypertension. No ambulance

arrived, and the caller had to arrange for private transportation and treatment. A Department investigation into the incident revealed that the call had not been entered into the computer system. Hutchinson maintained that the computer malfunctioned, but the Department determined that he had failed to enter the call properly.

### B. *The Adverse–Action Procedures.*

#### 1. *The Agency.*

In an official letter, Deputy Fire Chief Philip Matthews, the administrator of the Communications Division, proposed that Hutchinson be removed for "inefficiency," specifically, the "[f]ailure to satisfactorily perform one or more major duties of his ... position." *See* D.C.Code § 1–617.1(d)(3) (1992) (inefficiency is cause for removal); D.C. Personnel Regs. § 1603.1(c), 34 D.C.Reg. 1845, 1850 (1987) (same). In the parlance of the D.C. Personnel Regulations, Matthews acted as the "proposing official" and his recommendation of a removal was the "proposed penalty." *See* D.C. Personnel Regs. §§ 1609.1, 1609.5, 34 D.C.Reg. at 1854. This was Hutchinson's third instance of inefficiency;[1] removal was therefore an appropriate penalty in the "Table of Appropriate Penalties," D.C. Personnel Regs. § 1618.1, 34 D.C.Reg. at 1863.

The Department appointed a "disinterested designee," Deputy Fire Chief Joseph Quander, Jr., to review the proposed action before making a recommendation to the "deciding official," Fire Chief R. Alfred. *See* D.C. Personnel Regs. §§ 1613.1–1613.3, 34 D.C.Reg. at 1857. Quander recommended a ninety-day suspension. Pursuant to D.C. Personnel Regs. § 1614.1, 34 D.C.Reg. at 1858, Alfred evaluated Quander's report and issued his final decision: that the proposed penalty of removal was appropriate and Hutchinson should be removed.

---

1. The other two instances of inefficiency occurred on January 22, 1990, when Hutchinson worked as a dispatcher and recorded that two ambulances had responded to emergency calls even though he had not been able to contact those ambulances.

In his reply brief, Hutchinson suggests that at least one of the two earlier incidents was not his fault. We do not think this is an appropriate proceeding, however, for collateral attacks on earlier disciplinary determinations.

### 2. The Two Stages of OEA Review.

Hutchinson exercised his right under D.C.Code § 1–606.3(a) to appeal this adverse action to the OEA. *See also* OEA R. 604.1(b), 39 D.C.Reg. 7404, 7406 (1992). In the first stage of OEA review, an administrative judge, Blanca E. Torres, held a de novo evidentiary hearing at which various witnesses testified. *See* OEA R. 628.1, 628.2, 39 D.C.Reg. at 7421. In her initial decision, the administrative judge found that the Department had proven that Hutchinson's inefficiency, and not a computer malfunction, was the reason the call was lost. The administrative judge also determined that removal was an appropriate penalty.

On January 25, 1994, Hutchinson initiated the second stage of OEA proceedings by filing a petition for review with the full OEA.[2] *See* OEA R. 636.2, 39 D.C.Reg. at 7425 ("[t]he initial decision shall not become final if any party files a petition for review"); *see also* OEA R. 637, 39 D.C.Reg. at 7426–27 (governing review procedures). Specifically, Hutchinson asked that the administrative judge's initial decision be "reconsidered" in light of the decision of another administrative judge concerning another Fire Department employee. The OEA denied the petition in a twelve-page opinion and the administrative judge's initial order became the OEA's final order. *See* OEA R. 636.3, 39 D.C.Reg. at 7425.

### 3. The Courts.

From this final order, on August 22, 1994, Hutchinson appealed to the Superior Court, alleging errors at both stages of the OEA proceedings. *See* D.C.Code § 1–606.1(d) ("A final decision of the full Office [of Employee Appeals], relating to an appeal brought to it from a hearing examiner, shall be appealable to the Superior Court of the District of Columbia.");[3] OEA R. 637.10, 39 D.C.Reg. at 7427 ("Any employee or agency may appeal a final decision of the Office to the Superior

Court of the District of Columbia."). The Superior Court denied the petition for review and affirmed the final decision of the OEA. From these rulings, Hutchinson appeals to this court.

### II.

Hutchinson asserts that the following errors occurred in the OEA proceedings: (A) the Department failed to prove that the lost call was a result of Hutchinson's inefficiency rather than a computer malfunction; (B) the administrative judge should have granted Hutchinson's request to subpoena Fire Chief Alfred; (C) the administrative judge should not have admitted the prior testimony of Deputy Fire Chief Matthews; (D) the deciding official, Fire Chief Alfred, was limited to imposing a penalty no greater than that recommended by the disinterested designee, i.e., a ninety-day suspension; and (E) the full OEA should have granted his petition for review. We find no merit in any of Hutchinson's contentions.

### A. Proof of Inefficiency.

█ First, Hutchinson contends that the Department did not prove that the 911 call was lost because he failed to enter it properly, rather than because of a system malfunction at his computer terminal. The OEA administrative judge concluded otherwise. Although Hutchinson appeals from the Superior Court's review of the OEA's decision, we review the administrative decision as if the appeal had been taken directly to this court. *See District of Columbia v. Davis,* 685 A.2d 389, 393 (D.C.1996). We review the OEA's findings under the familiar "substantial evidence" test. *Id.* "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Davis–Dodson v. District of Columbia Dep't of Employment Servs.,* 697 A.2d 1214, 1218 (D.C.1997) (quoting *Ferreira v. District of Columbia Dep't of*

2. This pleading was captioned "Petition for Reconsideration," but the OEA treated it as a petition for review. In his submissions to Superior Court and to this court, Hutchinson refers to this document alternately as a petition for reconsideration and a petition for review; we take his position to be that this particular pleading was properly treated as a petition for review.

3. The OEA now refers to its hearing examiners as administrative judges, the title we use in this opinion.

*Employment Servs.*, 667 A.2d 310, 312 (D.C. 1995)). "If the administrative findings are supported by substantial evidence, we must accept them even if there is substantial evidence in the record to support contrary findings." *Metropolitan Police Dep't v. Baker*, 564 A.2d 1155, 1159 (D.C.1989).[4]

The Department was required to prove by a preponderance of the evidence the cause cited for Hutchinson's dismissal, namely, inefficiency. *See* OEA R. 632.1, 39 D.C.Reg. 7404, 7424 (1992) (defining preponderance as "[t]hat degree of relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to find a contested fact more probably true than untrue"). The administrative judge heard detailed testimony about how communications operators receive 911 calls, assign each call a priority code depending on the gravity of the situation, and enter the information into the computer system. She also heard technical testimony concerning the computer system itself.

The administrative judge concluded that Hutchinson's inefficiency, not a system malfunction, was the more persuasive explanation for why the call was not entered into the computer system. This conclusion is supported by the testimony of Hutchinson's shift supervisor, Michael Hardgrove, who explained that the system generated a printout of all properly-entered calls, but that Hutchinson's call did not appear on the printout. A separate record of all incoming calls and

an audio tape, however, confirmed that the call was made and that Hutchinson answered the line. According to the testimony of the Department's computer programmer, operators always received an on-screen confirmation that a call has been entered properly. When the system malfunctioned, it would not post an on-screen confirmation and would not accept any further entries.[5] Thus Hutchinson would be aware of a malfunction, and of the need to enter the call again, because he would not receive a confirmation and the system would not accept further calls. Hutchinson testified, however, that he was able to enter the next call without any interruption. From the evidence that the system did not stop, a reasonable mind could fairly conclude that a malfunction did not occur, but rather that Hutchinson simply failed to enter the call properly.

Through cross-examination of the Department's witnesses, and through the direct examination of his own witnesses, Hutchinson raised the specter that undiscovered software "bugs" and inadequate memory may have caused the problem. One of his witnesses, James Figard, had been fired from the Department after an unrelated mishap involving a 911 call. Figard testified that on hundreds of occasions the computer system would not accept his entries even though he followed the appropriate steps. The administrative judge, however, "found Figard's testimony to be given in a glib and offhanded manner and[ ] generally ... unreliable."[6]

---

4. *Cf. Stokes v. District of Columbia*, 502 A.2d 1006, 1010 (D.C.1985), where we held that the OEA's conclusion that the agency failed to demonstrate that dismissal was an appropriate sanction was "arbitrary and capricious" and "an abuse of discretion." We note that the OEA regulations cited in *Stokes* have since been superseded. *See* 39 D.C.Reg. 7404–31 (1992).

5. The programmer also described the typical malfunction as follows: "It [the computer system] would take a long time and then sometimes it would just stop." In his brief to us, Hutchinson emphasizes the word "sometimes" and suggests that the administrative judge mischaracterized the programmer's testimony as describing a malfunction that might *likely* cause the system to stop. When that sentence is read together with his entire testimony, however, notably the passages we have summarized in the text, the programmer's testimony supports the administrative judge's finding.

Hutchinson also argues that the administrative judge mischaracterized the testimony of one of his witnesses, Martin Turner, who was a watch commander in the Communications Division. According to the administrative judge, Turner testified that on two occasions his computer keyboard locked and accepted no further entries. Hutchinson insists that Turner did not so testify. We think the following words uttered by Turner adequately describe a locked, nonresponsive keyboard: "When I was putting the call into the computer it just so happened I was watching the screen and when I hit the queue button, I hit the SEND [button] and nothing happened. So I hit the queue button again and hit SEND and nothing happened."

6. In addition, the administrative judge doubted that hundreds of emergency 911 entries could be lost without a single formal complaint by the operators, or, indeed, the callers. Figard had

■ Hutchinson contends that "glib and offhanded" are not valid reasons to discredit a witness. "In reviewing the OEA, we give great deference to any credibility determinations of the administrative factfinder." *Baker, supra,* 564 A.2d at 1159. An administrative factfinder need not give any reason at all for his or her credibility determinations. *See McKinley v. District of Columbia Dep't of Employment Servs.,* 696 A.2d 1377, 1386 (D.C.1997); *Gunty v. Department of Employment Servs.,* 524 A.2d 1192, 1198–99 (D.C.1987). Thus Hutchinson was not entitled to an explanation for why the administrative judge discredited Figard. In any event, "glib" and "offhanded" are valid reasons for discrediting a witness because they bear on the manner of the witness's testimony and the seriousness with which the witness has approached the proceedings.

■ Although Hutchinson insists that his evidence "successfully rebutted" the Department's, the administrative judge, not this court, decides what weight to accord the evidence in evaluating whether the Department proved its case by a preponderance. Because the record contains substantial evidence supporting the administrative judge's conclusion that Hutchinson's inefficiency, and not a computer malfunction, caused the loss, we must affirm her decision. *See Baker, supra,* 564 A.2d at 1159.

**B.** *Hutchinson's Request to Subpoena Fire Chief Alfred.*

■ Next, Hutchinson contends that the administrative judge should have granted his request to subpoena Fire Chief Alfred. Normally we review an administrative judge's decision to grant or deny a subpoena for abuse of discretion. *See Jones v. District of Columbia Dep't of Employment Servs.,* 451 A.2d 295, 297 (D.C.1982) (per curiam). However, the record before us is insufficient to demonstrate this claimed error or otherwise permit meaningful review. The record includes Hutchinson's request to call Fire Chief Alfred and the hearing transcript, which does not include the Fire Chief's testi-

mony. But there is nothing in the record to indicate whether the administrative judge granted, denied, or forgot about the request, nor is there any objection or other response by Hutchinson to any such action or inaction. Hutchinson's attorney tells us in his brief that the administrative judge denied his request over the telephone, but a recollection of a conversation does not provide an adequate basis for this court to rule. " 'Appellate review is limited to matters appearing in the record before us, and we cannot base our review of errors upon statements of counsel which are unsupported by that record.' " *Cobb v. Standard Drug Co.,* 453 A.2d 110, 112 (D.C.1982) (quoting *D.C. Transit Sys., Inc. v. Milton,* 250 A.2d 549, 550 (D.C.1969)); *see also Cooper v. District of Columbia Dep't of Employment Servs.,* 588 A.2d 1172, 1174 (D.C.1991) (noting that in administrative appeals, the burden is on the appellant to show error). In this posture, appellant's claim with respect to a subpoena of Fire Chief Alfred must be rejected.

**C.** *Admissibility of Deputy Fire Chief Matthews's Prior Testimony.*

■ We turn to Hutchinson's contention that the administrative judge erred in admitting the prior testimony of Deputy Fire Chief Matthews, who testified about Hutchinson's removal in an earlier proceeding but appeared to be unavailable for the hearing that underlies the current OEA decision. Hutchinson insists that he had "an absolute right to have the Administrative Judge ascertain the credibility of Deputy Chief Mat[t]hews through observation, just as she had with the other witnesses." We conclude that Hutchinson had no "absolute right" to exclude hearsay from the administrative proceeding, and that the prior testimony was properly admitted and considered by the administrative judge.

■ "It is settled that hearsay evidence may be admitted in administrative hearings. Administrative tribunals are not required to disregard evidence merely because it is hearsay." *Gropp v. District of*

---

testified that he registered his complaints verbally "on many occasions," but that neither he nor any other operator reduced these complaints to

writing. Moreover, he testified that none of the callers affected ever complained about the lost calls.

*Columbia Bd. of Dentistry,* 606 A.2d 1010, 1014 (D.C.1992) (citations and footnotes omitted).

In fact, hearsay evidence can serve under some circumstances as "substantial evidence" on which to base a finding of fact.... Among the factors to consider in evaluating the reliability of hearsay evidence are whether the declarant is biased, whether the testimony is corroborated, whether the hearsay statement is contradicted by direct testimony, whether the declarant is available to testify and be cross-examined, and whether the hearsay statements were signed and sworn.

*Wisconsin Ave. Nursing Home v. District of Columbia Comm'n on Human Rights,* 527 A.2d 282, 288 (D.C.1987) (citations omitted). Hearsay in the form of prior testimony may be admissible in judicial proceedings if the witness is unavailable to testify at the pending proceeding. *See Bedney v. United States,* 684 A.2d 759, 763 (D.C.1996); *cf.* Fed.R.Evid. 804(b)(1). We assume, without deciding, that unavailability is required for the admission of prior testimony in administrative proceedings.

 The only showing of unavailability in this case was the representation of an Assistant Corporation Counsel that Matthews was too sick to appear. We have demanded a more heightened showing that a witness is indeed unavailable before allowing the admission of prior testimony in a criminal homicide trial. *See Stack v. United States,* 519 A.2d 147, 157–58 (D.C.1986) (indicating that expert testimony as to a witness's health is necessary to demonstrate his unavailability). The rules of evidence in administrative hearings, however, are more relaxed than those governing judicial proceedings. *See In re Thompson,* 583 A.2d 1006, 1007 & n. 2 (D.C. 1990) (per curiam); *see generally* 4 Jacob A. Stein et al., Administrative Law § 22.01 (1996). Even in a judicial proceeding, a trial judge's unavailability determination need not follow a formal hearing and is not limited to admissible evidence. *See* 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 804.03[5][c] (Joseph M. McLaughlin ed., 2d ed.1997).[7] Counsel's good-faith representation that Matthews was too ill to appear was sufficient to convince the administrative judge that the witness was unavailable. Again assuming, without deciding, that unavailability is required, we see no reason to disturb the unavailability determination on appeal, given the relaxed standards applicable to administrative proceedings.

The substance of Matthews's prior testimony was admissible under *Wisconsin Avenue Nursing Home, supra,* 527 A.2d at 288. The bulk of his testimony was corroborated by other facts in the record, *viz.,* that Hutchinson had been deemed "inefficient" on two other occasions and that his disciplinary record influenced Matthews's decision to propose removal. The declarant was not only subject to cross-examination but actually cross-examined *by Hutchinson* when giving the prior testimony. Finally, the prior testimony was of course sworn.

**D.** *The Severity of the Penalty Imposed.*

 Next, Hutchinson contends that the deciding official, Fire Chief Alfred, impermissibly imposed a greater penalty than that recommended by the disinterested designee, Deputy Fire Chief Quander. Hutchinson contends that any discipline should have been limited to the ninety-day suspension recommended by Quander. This argument turns on the proper interpretation of the following regulation: "The deciding official shall either sustain the penalty proposed, reduce it, or dismiss the action with or without prejudice, but shall not increase the penalty." D.C. Personnel Regs. § 1614.4, 34 D.C.Reg. 1845, 1858 (1987). Hutchinson maintains that the terms "penalty proposed" and "penalty" re-

---

7. Indeed, Rule 104(a) of the Federal Rules of Evidence would seem to permit the trial court to find a witness unavailable on the basis of a proffer. *See* Fed.R.Evid. 104(a) advisory committee's note ("Is a witness whose former testimony is offered unavailable? ... To the extent that these inquiries are factual, the judge acts as a trier of fact.... The rule provides that the rules of evidence in general do not apply to this process."). *Cf. United States v. Haldeman,* 181 U.S.App. D.C. 254, 330, 559 F.2d 31, 107 (1976) (en banc) (per curiam) ("the technical rules of evidence are inapplicable to a hearing before the trial judge on the preliminary legal question of the admissibility of evidence").

fer to the penalty recommended by the disinterested designee, Quander, which in this case was the ninety-day suspension. The OEA administrative judge, however, interpreted "penalty proposed" and "penalty" as references to the initial penalty proposed by the proposing official, Matthews, which in this case was removal. This decision became the final decision of the OEA after the full OEA denied Hutchinson's petition for review. *See* OEA R. 636.3, 39 D.C.Reg. 7404, 7425 (1992).

 This court will defer to an agency's interpretation of the statute it administers, unless the interpretation

conflicts with the plain meaning of the statute or its legislative history. Indeed, we must sustain the agency's interpretation even if a petitioner advances another reasonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the statute in the first instance.

*Powers v. District of Columbia Dep't of Employment Servs.*, 566 A.2d 1068, 1069 (D.C. 1989) (quoting *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988)); *see also District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C.1996); *cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) ("We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ."). The purpose of the OEA is to review certain personnel decisions of other District of Columbia agencies, *see* D.C.Code § 1–606.3(a) (1992), and, in fulfilling that purpose, the OEA has developed an expertise in administering and enforcing the District of Columbia Personnel Regulations. A regulation has the force and effect of law, much like a statute. *See Dankman v. District of Columbia Bd. of Elections & Ethics*, 443 A.2d 507, 513 (D.C. 1981) (en banc). Accordingly, we defer to the OEA's interpretation of the personnel regulations to the same extent that we would defer to any agency's interpretation of the statute it administers.

We conclude that the OEA's interpretation of the regulation is consistent with its plain meaning and legislative history, and that D.C. Personnel Regs. § 1614.4 prevents the deciding official from increasing only the penalty proposed by the proposing official. At one time, the regulations appear to have limited the deciding official to imposing a penalty no greater than that recommended by the disinterested designee. *See* D.C. Personnel Regs. § 1604.21, 30 D.C.Reg. 5874, 5887 (1983) ("the deciding official may impose or reduce the penalty recommended by the disinterested designee"). Those older regulations, however, were expressly superseded in 1987, *see* 34 D.C.Reg. at 1845, and the newer version replaced the phrase "penalty recommended by the disinterested designee" with the phrase "penalty proposed." The newer phrase appears to be a term of art referring to what is proposed by the proposing official. The regulations consistently refer to the notice issued by the proposing official as the "proposed" penalty, whereas the report of the disinterested designee is described as the "recommendation." *See* D.C. Personnel Regs. § 1601.1, 34 D.C.Reg. at 1848 (defining "proposing official" as the one who advances a "proposed corrective or adverse action," but defining "disinterested designee" as the one who "reviews the proposed action" and "makes recommendations"); D.C. Personnel Regs. § 1609.5, 34 D.C.Reg. at 1854 (under the heading "Duties and Responsibilities of Proposing Official," requires that the "proposed penalty" be consistent with the range of penalties established elsewhere in the regulations); D.C. Personnel Regs. § 1613.3(a), (d), 34 D.C.Reg. at 1857 (identifying disinterested designee's responsibilities as reviewing the "proposed action" and making his or her own "recommendation").

Under the prevailing interpretation of the regulations, the deciding official acted within his authority by firing Hutchinson. The proposing official, Matthews, proposed removal, and the deciding official, Alfred, imposed that proposed penalty. This procedure was consistent with D.C. Personnel Regs. § 1614.4. There is nothing in the current regulations to prevent a deciding official from imposing a penalty greater than what was recommended

by the disinterested designee, provided, of course, that the penalty not exceed what was proposed by the proposing official.

### E. The Petition for Review and the Figard Decision.

Finally, Hutchinson contends that the full OEA erred in denying his petition for review.[8] He petitioned for "reconsideration" in light of *Figard,* a decision of another OEA administrative judge affecting another Department employee who had been fired after mishandling a 911 call; the case concerned the same Figard who had testified at Hutchinson's hearing and whose testimony Hutchinson's administrative judge did not credit, as discussed *supra.* Hutchinson asserts that the petition should have been granted for three primary reasons: (1) the petition satisfied the OEA's criteria for granting a petition for review, even though the OEA concluded otherwise, (2) issue preclusion would require the application of *Figard* to Hutchinson's case, and (3) the administrative judge's analysis in *Figard* demonstrates that Hutchinson was treated disparately from other, similarly-situated employees. We find no merit in any of these arguments.

### 1. OEA Rule 637.4(a).

The OEA denied Hutchinson's petition because it failed to satisfy the criteria of OEA Rule 637.4, 39 D.C.Reg. 7404, 7426 (1992), which lists the circumstances under which a petition may be granted. Specifically, the *Figard* decision was not "new and material evidence ... that, despite due diligence, was not available when the record was closed." OEA R. 637.4(a), 39 D.C.Reg. at 7426.[9] The OEA emphasized that the *Figard* decision was available to Hutchinson because both employees were represented by the same attorney, who was served with the *Figard* decision when it was issued in July 1993. The record in Hutchinson's case closed several weeks later, in September 1993, and the initial decision was released on December 15 of that year.

Hutchinson maintains that the administrative judge closed the record some time in March 1993, which would have been months before *Figard* was decided, but we see nothing in the record to indicate that the record formally closed until September 1, 1993. On January 15, 1993, the hearing examiner stated, "I'll keep the record open pending receipt of your written closing statements." We read this as a statement that she *intended* to close the record some time after she received written closing arguments, which she indeed received that March, but a mere statement of intentions cannot be deemed a final order.

---

8. The statute governing appeals from a decision of an OEA administrative judge provides: *"An appeal from a decision of any ... hearing examiner may be taken either* to the full Office [of Employee Appeals] *or* to the Superior Court of the District of Columbia at the option of any adversely affected party." D.C.Code § 1–606.1(d) (1992) (emphasis added). The party adversely affected by a decision is free to choose either avenue of review, but the statute does not appear to permit a party to bifurcate the appeal process by presenting some issues to the full OEA and others to the Superior Court after the administrative judge's decision becomes final.

We question whether Hutchinson followed the correct procedures in this case, and thus whether he has waived all arguments other than this single matter presented to the full OEA. *See Gilmore v. Board of Trustees,* 695 A.2d 1164, 1166 (D.C.1997); *Lenkin Co. Management, Inc. v. District of Columbia Rental Hous. Comm'n,* 642 A.2d 1282, 1286 (D.C.1994); *In re James,* 452 A.2d 163, 169 (D.C.1982) ("In the context of administrative appeals, we do not address objections that could have been, but were not[,] raised prior to judicial review."). Corporation Counsel, however, has not raised waiver for failure to exhaust administrative remedies as a defense to Hutchinson's additional arguments. We have decided, at least in the circumstances of this case, to reach the merits of all arguments. *Cf. Rose v. United States,* 629 A.2d 526, 534–35 (D.C.1993) (court will not second-guess a litigant's tactical decisions); *Carducci v. Regan,* 230 U.S.App. D.C. 80, 86, 714 F.2d 171, 177 (1983) ("appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them").

9. There are other regulatory criteria for granting a petition for review, but Hutchinson does not argue that these are present in his case. *See* OEA R. 637.4(b)-(d), 39 D.C.Reg. at 7426.

Thus Hutchinson's attorney was aware of the *Figard* decision while the record remained open, but he failed to bring any value he felt it might have had to the attention of the administrative judge. Even if Hutchinson believed the record had closed, he could have moved to reopen the record under OEA Rule 634.1, 39 D.C.Reg. at 7425, as soon as he learned of the *Figard* decision. Instead, he waited until the administrative judge issued her initial decision and petitioned for review. The OEA properly denied Hutchinson's petition for review under OEA Rule 637.4(a).

### 2. *Issue Preclusion.*

 Even if the petition for review had satisfied the OEA's rule, we see no basis to disagree with the OEA's conclusion that Hutchinson's *Figard* arguments lack merit in any event. Hutchinson argues that the doctrine of issue preclusion, or collateral estoppel, would require certain aspects of *Figard* to apply to his case. Issue preclusion applies to agency proceedings in certain circumstances, *see Oubre v. District of Columbia Dep't of Employment Servs.*, 630 A.2d 699, 703 (D.C.1993), but the doctrine only precludes parties from "relitigating *an issue actually decided* in a previous, final adjudication," *see Rhema Christian Ctr. v. District of Columbia Bd. of Zoning Adjustment*, 515 A.2d 189, 193 (D.C.1986) (emphasis added). "Issue preclusion does not apply when the issues in the prior and current litigation are not identical, even though similar." 18 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 132.02[2][a] (3d ed.1997) (footnotes omitted).

The issues underlying Hutchinson's termination may be somewhat similar, but they are not identical, to the issues underlying Figard's termination, and therefore the doctrine has no application to this case. The *Figard* decision concerned a 911 operator who was fired for inefficiency after someone called to report a man dangling from the high-voltage wires above an Amtrak facility but the operator did not promptly dispatch emergency crews. This was the operator's first disciplinary violation in all of his twenty-three years with the Fire Department. The OEA administrative judge in *Figard* found that removal was inappropriate on those facts. In particular, the administrative judge in *Figard* was concerned that the Fire Chief had "announced his desire that all employees involved receive the 'maximum penalty,'" regardless of the rules and regulations governing personnel decisions. Hutchinson, however, does not purport to have been involved in the Figard incident, and none of the pertinent facts overlap.[10]

### 3. *Disparate Treatment.*

 Hutchinson also contended before the OEA, as he does to us, that *Figard* indicates that removal constituted disparate treatment. Although he claims that removal was disparate treatment, Hutchinson has failed to identify any similarly-situated employees who have been treated differently. Hutchinson does not argue that he was treated disparately from Figard, the twenty-three year veteran, but rather that he was treated disparately from sixteen other employees whose cases were discussed by the administrative judge in the *Figard* decision. As the full OEA observed, however, Hutchinson was not situated similarly to these employees. Of the sixteen employees discussed in *Figard*, twelve had no prior disciplinary record whatever, quite unlike Hutchinson's record of three instances of discipline over just eighteen months. The four employees who had been disciplined before all worked on ambulance crews, not in the Communications Division, and so their job responsibilities and standards of professionalism were not strictly comparable with Hutchinson's. Thus

---

10. Hutchinson suggests that the Fire Chief's decision to remove him may have been motivated by a displaced anger over the Figard incident, but that contention is not supported by this record.

Hutchinson has failed to demonstrate disparate treatment vis-a-vis the sixteen employees listed in the *Figard* decision.[11]

*Affirmed.*

11. Hutchinson also insists that the Department failed to consider mitigating circumstances before imposing the punishment of removal. However, he has not identified a single mitigating circumstance to us. The full OEA, in its opinion denying the petition for review, also noted Hutchinson's failure to show mitigating circumstances, "such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter...." The Department cannot be expected to consider mitigating circumstances if there are none.