**Markus JAHR, Petitioner,**

v.

**DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS, Respondent.**

**No. 09–CV–496.**

District of Columbia Court of Appeals.

Argued April 22, 2010.

Decided May 12, 2011.

As Amended May 26, 2011.

---

James T. Maloney, Cleveland, for petitioner.

Sheila Kaplan, Senior Assistant Attorney General, with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for respondent.

Before WASHINGTON, Chief Judge, and FISHER and BLACKBURNE-RIGSBY, Associate Judges.

WASHINGTON, Chief Judge:

Petitioner, Markus Jahr, was terminated from his position as a paramedic with the District of Columbia Fire and Emergency Medical Services Department ("Department") for dishonesty and inexcusable neglect of duty. On appeal from an order by the Superior Court affirming the decision of the Board of the Office of Employee Appeals ("OEA") to uphold his termination, Jahr contends that the Superior Court erred in ruling that the District was not bound by a prior decision of the Office of Unemployment Compensation that found that his conduct did not constitute misconduct sufficient to deny him unemployment compensation benefits. Jahr also contends that the Superior Court's order was based on factual findings by the OEA that are not supported by substantial evidence in the record. We disagree and affirm the Superior Court's conclusion that (1) the OEA properly denied the application of preclusive effect to rulings made in the prior unemployment compensation proceeding; and (2) the OEA's decision to terminate Jahr is based on substantial evidence in the record.

## I. FACTUAL SUMMARY

### A. The Personal Errand.

Jahr worked as an Ambulance Crew Member–Aide paramedic and was assigned to an Advanced Life Support ambulance, Medic Number 18, which provides emergency medical care to injured persons in the District of Columbia. Jahr's responsibilities included administering complex medication and performing advanced emergency medical procedures.

At approximately 4:10 p.m., on January 1, 1999, Jahr and his partner, Robert Aronson, were dispatched to a motor vehicle accident. As the Ambulance Crew Member–In–Charge, Aronson was the driver of the ambulance. Around 4:16 p.m., the medic unit reported by radio to the Department's Communication Division that it had arrived at the scene of the accident. At 4:36 p.m., the unit reported that it had successfully transported the accident victim to the Washington Hospital Center ("WHC"). Pursuant to Department policy, all units are to "immediately return to their respective quarters by the most direct route as soon as they have cleared their assigned response." Notwithstanding this policy, once finished at the hospital, Aronson indicated to Jahr that he needed to fill a personal prescription at a pharmacy. The ambulance proceeded to the Target Store located at the Potomac Yards Shopping Center in Alexandria, Virginia. At 5:25 p.m., while Jahr and his partner were in the Target Store, the ambulance was spotted in the shopping center parking lot by a former employee of the Department who reported the ambulance's location to Lieutenant John Clayton.

At 5:30 p.m., the Department made efforts to locate the ambulance. EMS shift commander, Captain Jerome Stack, contacted the WHC Emergency Department

to verify the location of Medic 18. The WHC emergency medical representative responded that Medic 18 was not at WHC. Captain Stack then sent a Lieutenant to WHC, who searched the premises but could not find the ambulance. All attempts to contact Medic 18 through radio proved unsuccessful at that time.

At 5:41 p.m., Jahr contacted the Department's Communications Division to request additional time to retrieve Medic 18's clipboard, which he stated was left at WHC.[1] When asked his current location, Jahr stated, "We are located at the Washington Hospital Center." When told that the ambulance was not at WHC, and that a Lieutenant was at the site looking for Medic 18, Jahr insisted that the unit was at the hospital complex. An additional search at WHC found no sign of the ambulance. Jahr later admitted that he was in Alexandria, Virginia with Aronson running a personal errand at the time that the former employee reported seeing Medic 18 at the Target store. As a result of this incident, Jahr was officially terminated on May 7, 1999, for "dishonesty" and "inexcusable neglect of duty." [2] This was Jahr's second instance of dishonesty.[3]

### B. Unemployment Compensation.

While Jahr's appeal of his termination was pending before the OEA, he applied for unemployment benefits with the District of Columbia Office of Unemployment Compensation. Jahr's application for unemployment benefits was initially denied. He appealed and on July 15, 1999, a hearing was held before Appeals Examiner N. Denise Wilson–Taylor, Esq. At the conclusion of the hearing, the appeals examiner found, *inter alia*, that Jahr was not the driver of the ambulance, and while he exercised bad judgment by accompanying his partner on the personal errand, it did not amount to misconduct and therefore he was entitled to unemployment benefits.[4]

### C. Appealing Jahr's Termination

Having prevailed in obtaining unemployment benefits, which included a finding

---

1. Medic 18's clipboard contains documentation of all its emergency runs.

2. Jahr's termination letter described "dishonesty" and "inexcusable neglect of duty," as defined in the District Personnel Manual, as "[d]eliberately misrepresenting facts of a situation to avoid carrying out assigned duties and/or responsibilities," and "[n]egligence in performing official duties, including failure to follow verbal or written instructions," respectively.

3. In 1996, Jahr's EMT/Paramedic certificate was suspended for medical reasons as he was recuperating from an injury. The certificate could have been reinstated on a provisional status once he returned to duty, but Jahr would not have been eligible for overtime. Nonetheless, Jahr obtained an EMT certification under false pretenses so that he would be eligible to work overtime as a paramedic. Jahr was suspended on April 7, 1998 for 15 days for "falsification of material facts by omission, or by making a false entry, in offi-

cial documents or records where property or funds are not misused," under the District Personnel Manual.

4. At the time, the governing statute, D.C.Code § 46–111(b)(2) (1983), defined "misconduct" as:

> ... an act of willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of his employees, negligence to such a degree or recurrence as to manifest culpability, wrongful intent, or evil design, or showing an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

This legislation has since been amended, and is now codified in D.C.Code § 51–110(b) (2001). *See generally Chase v. District of Columbia Dept. of Emp't Servs.*, 804 A.2d 1119, 1121 (D.C.2002) (explaining the effect of the amendment on unemployment benefits hearing procedures).

that Jahr had not been terminated for his own misconduct, Jahr moved *in limine* to preclude the Department from asserting before the OEA that he had been terminated for misconduct. The OEA denied Jahr's motion, and undertook an independent review of his termination. After reviewing the evidence, the OEA concluded that the Department properly terminated Jahr on the asserted grounds, namely, dishonesty and inexcusable neglect of duty.

On appeal, Jahr challenges (a) the Superior Court's decision upholding the OEA's denial of his motion in limine, and (b) the decision to uphold his termination. We affirm.

## II. ANALYSIS

### A. *The Preclusive Effect of the Unemployment Benefits Findings*

■ Jahr first argues that the Department should have been precluded from arguing to the OEA that he was terminated for misconduct because the OEA was bound by the factual findings of the hearing examiner in Jahr's unemployment compensation case that his actions on this occasion did not amount to misconduct. Jahr's argument is extrapolated from D.C.Code § 51–111(j) (2001), which states that factual findings by the Office of Unemployment Compensation are not binding on any "arbitrator, judge, or court of the District of Columbia."[5] In essence, Jahr asserts that because the OEA is not a "court" and does not employ "judge[s]" in rendering its decisions, the findings of the

unemployment compensation examiner should have been binding on the OEA under the doctrines of res judicata or collateral estoppel. We are unpersuaded by Jahr's strained reading of the statute and affirm.

First, we reject Jahr's assertion that the official who heard the evidence and rendered the initial decision in Jahr's termination case before the OEA was not a judge within the meaning of the statute. Section 51–111(j) makes it clear that the drafters intended that findings in unemployment benefits hearings would have no binding effect on decision makers in subsequent adjudicatory proceedings between an employee and an employer. We have recognized the adjudicatory nature of OEA proceedings, *see Hutchinson v. District of Columbia Office of Emp. Appeals,* 710 A.2d 227, 230 n. 3 (D.C.1998), and Jahr's hearing in the OEA was before an Administrative Law Judge. Nothing in the OEA statute suggests that the Administrative Law Judges who hear and decide these cases are bound by prior decisions of the unemployment compensation board.

Our reading of the statute is also supported by the legislative history of § 51–111(j), which makes clear the Council's intent to limit the effect of any findings by the unemployment compensation office on collateral employment actions. The statute was enacted as part of section 107 of the District of Columbia Unemployment Compensation Improvement Amendments Act, 1993 D.C. Sess. Law Serv. 10–15 (West). The Committee on Labor's Re-

5. In full, D.C.Code § 51–111(j) (2001) reads: "Any finding of fact or law, determination, judgment, conclusion, or final order made by a claims examiner, hearing officer, appeals examiner, the Director, or any other person having the power to make findings of fact or law in connection with any action or proceeding under this subchapter, shall not be conclusive or binding in any separate or subsequent action or proceeding between an individual and his present or prior employer brought before an arbitrator, court, or judge of the District of Columbia or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts."

port reveals that the purpose of the amendment was to specify that with regard to unemployment benefits proceedings, "any findings of fact or law shall not be conclusive or binding in any separate or subsequent action." *See* D.C. COUNCIL, Report on Bill 10–52 at 4 (May 11, 1993). This clear statement of intent supports the OEA's conclusion in this case that "the goal of the legislation in creating the D.C. Unemployment Office was not so that an employee could take a favorable opinion from that office to be used to prohibit another adjudicatory agency ... from carrying out its statutory duty."

The OEA's decision not to apply preclusive effect to the findings of Jahr's prior unemployment benefits hearing is consistent with our decisions explaining that preclusive effect may properly be denied to prior findings where the burdens on and incentives for the party to be precluded differ greatly across the proceedings. *See Newell v. District of Columbia,* 741 A.2d 28, 36–37 (D.C.1999); *Ali Baba Co., Inc. v. WILCO, Inc.,* 482 A.2d 418, 421 (D.C.1984) (citing *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)); *see also* RESTATEMENT (2D) JUDGMENTS § 28 cmt. d (1982) ("RE-STATEMENT") (compiling authorities from a number of jurisdictions for the proposition that where the "procedures available in the first court [are] tailored to the prompt, inexpensive determination of small claims," preclusion may be "wholly inappropriate ... in the context of a much larger claim"). Preclusion may also be inappropriate where "[t]he scope of review in the first action [is] very narrow," or the legislature vests a particular tribunal with direct review of a particular issue because of its "special competence to deal with it." RESTATEMENT.

█ In the District, the Office of Unemployment Compensation presumes an employee eligible for benefits consistent with its humanitarian purpose, and an employer that wishes to render a former employee ineligible to receive such benefits bears the burden of proving that he was terminated for misconduct (gross or otherwise). *See . Odeniran v. Hanley Wood, LLC,* 985 A.2d 421, 427 (D.C.2009); *see Morris v. United States Envtl. Prot. Agency,* 975 A.2d 176, 181 (D.C.2009) ("The question whether the employee committed misconduct must be resolved with reference to the statutory purpose, which is to protect employees against economic dependency caused by temporary unemployment.") (citation omitted). By contrast, the OEA was established to review employment decisions "simply [to] ensure that managerial discretion has been legitimately invoked and properly exercised," and although the burden of persuasion is on the employer before the OEA, the employee does not enjoy the same presumption as he would before the Office of Unemployment Compensation. *Raphael v. Okyiri,* 740 A.2d 935, 945–46 (D.C.1999); *see Jadallah v. District of Columbia Dept. of Emp't Servs.,* 476 A.2d 671, 675 (D.C. 1984) ("Not every act for which an employee may be dismissed from work will provide a basis for disqualification from unemployment compensation benefits because of misconduct."). Moreover, in terms of incentives, while an employer faces merely a potential increase in its contribution to the unemployment compensation fund before the Office of Unemployment Compensation, *see Morris, supra,* 975 A.2d at 182 n. 5, an employer faces a potential reinstatement and back pay order before the OEA should the employee prevail. *District of Columbia v. Thompson,* 593 A.2d 621, 635 & n. 25 (D.C.1991) (recognizing the "OEA's power to grant relief very broadly," including the power to order reinstatement and back pay). These differences weigh heavily against applying preclusive

effect to the findings from Jahr's unemployment benefits proceeding in this case.

Our conclusion is in concert with the RESTATEMENT and decisions from a number of other jurisdictions also analyzing the preclusive effect of unemployment benefits decisions. *Accord Ferris v. Hawkins*, 135 Ariz. 329, 660 P.2d 1256, 1258–60 (App. 1983) (refusing to apply preclusion "[b]ecause of the totally distinct and separate nature of the rights and remedies under the unemployment compensation act and the Personnel Board legislation"); *Cicala v. Disability Review Bd. for Prince George's Cnty.*, 288 Md. 254, 418 A.2d 205, 211–13 (1980); *Rue v. K–Mart Corp.*, 552 Pa. 13, 713 A.2d 82, 86 (1998) ("The substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings."). We have been unable to find any jurisdiction applying these considerations under similar circumstances to reach a different conclusion, and Jahr has pointed us to none.

We are therefore satisfied that the Administrative Law Judge in this case was not bound by the prior findings in Jahr's unemployment benefits proceeding, and thus the Superior Court's order upholding the OEA's decision was proper.

Having concluded that the Superior Court was correct in determining that the OEA did not err in undertaking an independent analysis of Jahr's termination, we turn to the remaining question of whether the OEA's decision to uphold Jahr's termination was proper.

**B.** *The Board's Findings*

■ Jahr argues that the OEA's factual findings that he was dishonest and intended to neglect his official duties are not supported by substantial evidence in the record and therefore the penalty of termination upheld by the trial court is too severe for his conduct. However, we are satisfied, despite Jahr's numerous challenges, that the OEA's findings of fact and ultimate conclusion regarding his termination are sufficiently supported by the record, and therefore affirm the Superior Court's decision.

■ Although Jahr appeals from the Superior Court's review of the OEA's decision, we review the administrative decision as if the appeal had been taken directly to this court. *See District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C.1996). An OEA "decision must state findings of fact on each material contested factual issue; those findings must be supported by substantial evidence in the [OEA] record; and the [OEA]'s conclusions of law must follow rationally from its findings." *Johnson v. District of Columbia Office of Emp. Appeals*, 912 A.2d 1181, 1183 (D.C.2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hutchinson, supra,* 710 A.2d at 230–31 (citations omitted). The OEA reviews the severity of a penalty imposed upon an employee simply to ensure that the employer properly exercised its managerial discretion. *See Stokes v. District of Columbia,* 502 A.2d 1006, 1010 (D.C.1985) (reversal of a penalty is appropriate "[o]nly if the [OEA] finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness"). Upon review, we will only reverse where the OEA's action was "arbitrary, capricious, or an abuse of discretion." *Bagenstose v. District of Columbia Office of Emp. Appeals,* 888 A.2d 1155, 1157 (D.C.2005) (citations omitted).

There is clear evidence on the record to support the OEA's decision. The record

reveals that the Administrative Law Judge heard detailed testimony about the Department's unsuccessful efforts to locate Medic 18 the day of the incident. Despite Jahr's assertion that his statement that Medic 18 was outside of WHC was "roughly accurate," the OEA found that Jahr "blatantly lied to his superiors" in reporting the location of Medic 18, and that his request for more time to retrieve the clipboard was misleading.

Moreover, the record shows that Jahr, a 13–year veteran paramedic, was assigned to an ambulance designed to provide the highest level of care to injured persons in the District. The OEA found that Jahr was well aware that a quick response time was of the "utmost importance" to the Department, which was why the Department mandated that employees take the most direct route back to their station. The OEA also found that Jahr intended to avoid that duty with his statements as to Medic 18's whereabouts. The OEA acknowledged that the incident could have had a "serious impact" on the Department's operations and reputation, and that Jahr had been disciplined in the past for fraud. While the OEA considered the fact that Jahr was the first employee to be terminated for this particular conduct, it noted that removal was within the maximum range of penalties for the charges against Jahr,[6] and that Jahr did not establish that any similarly-situated employee was treated differently.[7] The record reveals that the OEA considered the relevant factors in Jahr's case, and given the gravity of the Department's concerns re-

garding the whereabouts of its service vehicles, the OEA found termination appropriate. As a result, we cannot say that its conclusion was arbitrary or capricious, or outside the "limits of reasonableness" given the circumstances. *See Stokes, supra,* 502 A.2d at 1011. We therefore conclude in this case that substantial evidence does indeed support the OEA's decision to terminate Jahr and therefore the decision of the Superior Court is

*Affirmed.*

---

6. *See generally Raphael, supra,* 740 A.2d at 948 & n. 22 (acknowledging that under the District Personnel Manual " 'inexcusable neglect of duty' constitutes grounds for removal, even for a first offense").

7. Though Jahr submitted examples of other employees who had committed similar acts

regarding service vehicles, none of those employees had similar records of disciplinary action against them. On this basis, the OEA properly concluded that Jahr failed to show disparate treatment. *See Hutchinson, supra,* 710 A.2d at 236.