*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-1134

KEVIN BALDWIN, APPELLANT,

V.

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS AND
DISTRICT OF COLUMBIA DEPARTMENT OF YOUTH SERVICES, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAP-7980-17)

(Hon. Robert R. Rigsby, Trial Judge)

(Submitted January 28, 2020                          Decided May 7, 2020)

Kevin Baldwin, *pro se.*

*Lasheka Brown Bassey* was on the brief for appellee Office of Employee Appeals.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Caroline S. Van Zile*, Deputy Solicitor General, and *Jason Lederstein*, Assistant Attorney General, were on the brief for appellee District of Columbia Department of Youth Rehabilitation Services.

Before FISHER, THOMPSON, and BECKWITH, *Associate Judges.*

THOMPSON, *Associate Judge*: In a September 13, 2016, Opinion and Order ("Order"), the Office of Employee Appeals Board (the "OEA Board" or the "Board") denied as untimely a petition brought by appellant Kevin Baldwin for

review of an OEA initial decision that upheld a personnel action by the District of Columbia Department of Youth Rehabilitation Services ("DYRS") terminating Mr. Baldwin from his job as a Youth Development Representative. Mr. Baldwin brought the instant appeal after the Superior Court affirmed the OEA Board's ruling. "[R]eview[ing] the OEA Board's decision, not the decision of the Superior Court[,]"[1] we conclude that the OEA Board erred in ruling that its petition-for-review deadline is jurisdictional and that it had no power to waive or extend the deadline. However, we affirm the OEA Board's alternative ruling denying Mr. Baldwin's petition on the merits.

## I.

Mr. Baldwin was terminated from his position after he got into a physical confrontation with, and caused injuries to, a youth at a DYRS secure facility on December 17, 2010, after the youth refused to return to his room for the night. The incident was captured on video surveillance footage. The matter was investigated by the Metropolitan Police Department ("MPD"), and criminal charges (simple assault and attempted second-degree cruelty to children) were brought against Mr.

---

[1] *Sium v. Office of the State Superintendent of Educ.*, 218 A.3d 228, 232 (D.C. 2019) (brackets omitted).

Baldwin but eventually were dropped. The DYRS Office of Internal Integrity ("OII") also investigated, but delayed its investigation in light of the MPD investigation. After an eventual hearing before a DYRS hearing officer, Mr. Baldwin was terminated for cause effective January 31, 2012.

Mr. Baldwin appealed his termination to the OEA, which held an evidentiary hearing on August 12, 2014. The OEA Administrative Law Judge ("ALJ"), who viewed the video surveillance footage,[2] upheld the termination in a January 14, 2015, decision. The ALJ found that Mr. Baldwin used excessive force and "was incompetent in applying" DYRS's use-of-force policy,[3] and concluded that DYRS had cause to take adverse action against him for his acts that constituted criminal offenses.

---

[2] The ALJ noted that the "image is clear" on the video.

[3] DYRS's use-of-force policy (referred to in the record as Youth Services Administration ("YSA") 9.14) states that force shall not be used to "strike or lay hand upon any youth" except in cases where the employee is in "defense of themselves, . . . to prevent an escape or serious injury to personnel or destruction of property; or to quell a disturbance not otherwise controllable" and further states that "only that amount of force necessary to accomplish the desired result shall be used. Excessive force shall not be tolerated. Corporal punishment or any deliberate physical abuse is absolutely forbidden."

On May 8, 2015, Mr. Baldwin petitioned for OEA Board review of the initial OEA decision. In denying the petition for review as untimely, the Board cited D.C. Code § 1-606.03(c), providing that "the initial [OEA] decision . . . shall become final 35 days after issuance, unless a party files a petition for review of the initial decision with the Office within the 35-day filing period." The Board also cited OEA Rule 633.1, which states that a party "may serve and file a petition for review of an initial decision with the Board within thirty-five (35) calendar days of issuance of the initial decision." The Board cited in addition opinions of this court referring to the 35-day deadline as "jurisdictional."[4] The OEA Board noted that Mr. Baldwin had sought an extension of the filing deadline to obtain counsel, but reasoned that it had no authority to rule on motions for extension or to waive the deadline.

The OEA Board included in its Opinion and Order an alternative basis for denying Mr. Baldwin's petition. The Board stated that assuming *arguendo* that it

---

[4] As discussed *infra*, insofar as the cited opinions refer to the 35-day limit as a jurisdictional rule, they have been superseded by recent Supreme Court jurisprudence. *See Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1101, 1103 n.25 (D.C. 2015) (explaining that "[t]he dividing line between jurisdictional and claim-processing rules has been in flux over the last decade" and that this court is not obliged "to follow, inflexibly, a ruling whose jurisprudential basis has been substantially undermined by subsequent Supreme Court decisions") (internal quotation marks omitted).

could consider the merits of Mr. Baldwin's appeal, it would still deny his petition. It rejected each of the merit arguments Mr. Baldwin had raised: that OII had failed to timely complete its investigation after receiving notice of his case and therefore was without authority to discipline him; and that the OEA ALJ had erred in crediting the testimony of DYRS's witnesses.[5]

## II.

It is undisputed that Mr. Baldwin filed his petition for review well outside the thirty-five day time limit specified in D.C. Code § 1-606.03(c) and OEA Rule 633.1. Understandably in light of this court's prior case law,[6] the OEA Board treated that limit as jurisdictional. If the Board's ruling was correct in that regard, we could uphold it on that basis alone. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) ("[A party's f]ailure to comply with a jurisdictional time prescription . . . deprives a court of [its power to hear a] case,

---

[5] Mr. Baldwin raised other arguments in his appeal to the Superior Court, but we will not "consider contentions not presented before [OEA] at the appropriate time." *DC Appleseed Ctr. for Law & Justice v. District of Columbia Dep't of Ins., Securities, & Banking*, 214 A.3d 978, 986 (D.C. 2019).

[6] *See District of Columbia Public Employee Relations Bd. v. District of Columbia Metropolitan Police Dep't*, 593 A.2d 641, 643 (D.C. 1991), and cases cited therein.

necessitating dismissal . . . ." (internal quotation marks and citation omitted)). For the reasons that follow, however, we now conclude that the thirty-five day limit is not jurisdictional but is instead a claim-processing rule.

As we explained in *Mathis*, "the modern bright[-]line default [rule] . . . is that procedural rules, even those codified in statutes, are nonjurisdictional in character." 124 A.3d at 1102 (citing authority that it is improper to use the term "jurisdictional" "to describe emphatic time prescriptions in rules of court") (internal quotation marks omitted). "Filing deadlines in particular . . . generally do not have jurisdictional force" and have such force only if the legislature "has clearly stated as much[,]" i.e., if the legislature "*plainly*" "meant for noncompliance with the deadline to have jurisdictional consequences." *Id.* (internal quotation marks and brackets omitted). As to deadlines codified in statutes, "[i]t is not enough that the legislature articulated the deadline using 'mandatory' language." *Id.*

In *Mathis*, we looked to whether the time limit in question (found in D.C. App. R. 15) was specified in the statutory provisions establishing this court's jurisdiction. *Mathis*, 124 A.3d at 1103; *see also United States v. Wong*, 575 U.S. 402, 403 (2015) (explaining that the legislature's "separation of a filing deadline

from a jurisdictional grant indicates that the time bar is not jurisdictional"). Employing a similar analysis here, we note that the thirty-five day limit is not found in the statutory provision (D.C. Code § 1-606.02) describing the authority of the OEA, but instead is found in a provision (D.C. Code § 1-606.03) pertaining to "Appeal procedures."[7] This weighs in favor of a conclusion that the 35-day limit of D.C. Code § 1-606.03 does not have "jurisdictional import," *Mathis*, 124 A.3d at 1103, and is instead a claim-processing rule. We so hold.

Claim-processing rules "may be tolled [or relaxed or waived] if equity compels such a result." *Id.* at 1101. In this case, we do not know whether the OEA Board thought that a waiver of the 35-day limit would have been equitable; having found that the limit was jurisdictional and could not be waived, the Board did not resolve that issue. Had the Board not issued its alternative ruling, a remand might be necessary in order for the Board to make that determination. We say "might" because we would also confront the issue of whether the Board could

---

[7] For that reason, we are not persuaded by the District of Columbia's argument that the thirty-five day deadline should be viewed as jurisdictional because it was established by the Council of the District of Columbia and is "embedded" within a section of the Comprehensive Merit Personnel Act of 1978 that "outline[s] the subject matter jurisdiction of OEA."

properly raise the 35-day limit *sua sponte*, as it did.[8]  The District argues that this was proper because the Council did not give the OEA Board explicit authority to extend the 35-day period.  But some courts have questioned whether a claim-processing deadline "must be pleaded by the party benefitting from its application," so that a court may not raise it *sua sponte*, as is the case with affirmative defenses.  *See, e.g.*, *United States v. Mitchell*, 518 F.3d 740, 748 (10th Cir. 2008) (ultimately concluding that courts may raise claim processing rules sua sponte in limited circumstances).  At the same time, courts have recognized an exception to that rule where a time limit "implicates the [adjudicative body's] power to protect its own important institutional interests" rather than an interest of the parties, such as finality, avoiding calendar congestion, minimization of uncertainty, and "waste of judicial resources caused by undue delay."  *Id.* at 749–50 (holding that an appellate court may raise *sua sponte* the time bar of Federal Rule of Appellate Procedure 4(b) when judicial resources and administration are implicated and the filing delay has been inordinate); *United States v. Williams*, No. 18-6319, 2019 U.S. App. LEXIS 9957, *2 (6th Cir. Apr. 3, 2019) (same).  Although the District argues that such interests, including concern about a backlog of cases before the OEA Board, justified the Board's *sua sponte* dismissal of Mr.

---

[8]  The Board did so even before the District was served with the petition for review.  This case therefore does not raise the issue of the opposing party's forfeiture of any objection to the untimely petition.

Baldwin's petition for review, we need not resolve the issue in this case because we conclude that affirmance is warranted on the basis of the Board's alternative ruling.

**III.**

We will not disturb the decision of the OEA Board if it "flows rationally from the facts which are supported by substantial evidence in the record." *District of Columbia v. Davis*, 685 A.2d 389, 393 (D.C. 1996). Like the OEA Board, we defer to credibility determinations of the OEA factfinder. *Hutchison v. District of Columbia Office of Emp. Appeals*, 710 A.2d 227, 232 (D.C. 1998).

In his appeal to the OEA and in his petition to the OEA Board, Mr. Baldwin argued that DYRS was prohibited from disciplining him because OII did not complete its investigation until March 8, 2011, and thus failed to complete its investigation of allegations of abuse within ten business days of receiving notice of the case, as directed in DYRS policy guidelines.[9] He renews that argument in this

---

[9] YSA 9.14(B)(6) states that OII "shall complete a final report on its investigation of an allegation of staff physical abuse of a youth within ten (10) business days after receiving oral or written notice of an allegation of staff physical abuse."

(continued…)

appeal. However, the OEA ALJ heard testimony from former OII Internal Integrity Officer Tony Newman, who told the ALJ that the ten-business-day policy, which emanated from the *Jerry M.* class action, was a target but not a mandatory deadline in every circumstance, and in any event had been superseded during the relevant time period by a work plan approved under the *Jerry M.* consent decree.[10] *See generally District of Columbia v. Jerry M.*, 571 A.2d 178 (D.C. 1990). According to the hearing evidence, that work plan set a flexible or "conditional" target of completion of investigations within thirty-five days of notice of an incident in 80% of cases within any four-month period. Mr. Newman also testified about DYRS's policy of delaying investigations so as not to interfere with criminal investigations by the MPD, a policy that, according to Mr. Newman's uncontradicted testimony, the *Jerry M.* court understood might reasonably cause the timeline to be exceeded in those circumstances. The ALJ found that through Mr. Newman's testimony, DYRS met its burden of demonstrating that it "did not violate its own policy" in completing the investigation. Although Mr. Baldwin conclusorily asserts that Mr. Newman's

---

(…continued)

[10] *Cf. Holzsager v. District of Columbia Alcoholic Beverage Control Bd.*, 979 A.2d 52, 61 (D.C. 2009) ("[T]his [c]ourt presumes that a statute is directory rather than mandatory if . . . [it] does not specify the consequences of noncompliance" with a time limit within which a public official must act.).

testimony was "false, erroneous, and misleading," he has provided us with no basis for declining to defer to the ALJ's contrary credibility determination.[11] Moreover, the District argues persuasively that the purpose of the ten-business-day policy was to ensure expeditious efforts to protect youths in DYRS custody from threats to their safety, not to provide staff with speedy resolution of allegations or to bar discipline if an investigation was not timely completed.

Finally, substantial evidence supports the ALJ's finding that DYRS had cause to terminate Mr. Baldwin. The surveillance video shows the youth in question holding, but not swinging or wielding, a chair, and then shows Mr. Baldwin grabbing the youth by his neck and slamming him into a glass window and wall, and eventually pushing the youth alongside the wall and into a corner. The ALJ also heard testimony from the DYRS Chief of Residential Programs and Services (Captain Baynes), who described the training Mr. Baldwin received regarding appropriate restraining techniques and conflict de-escalation and testified

---

[11] Mr. Baldwin cites an OEA initial decision in another case (*Michael Dunn v. District of Columbia Dep't of Youth Rehabilitation Servs.*, OEA Matter No. 1601-0047-10 (Oct. 5, 2012)) in which an ALJ concluded without analysis that because OII did not timely complete its investigation in compliance with the ten-business-days policy, DYRS had no cause to terminate the employee. *Dunn* Initial Decision at 14. The OEA Board distinguished *Dunn* on the ground that it did not involve delay because of MPD and District of Columbia Department of Child and Family Services investigations.

that Mr. Baldwin's use of force shown in the video was not appropriate. The video and Captain Baynes's testimony constituted substantial evidence supporting the ALJ's finding that Mr. Baldwin "aggravated" rather than de-escalated the circumstances and violated DYRS's use-of-force policy by "strik[ing] or lay[ing his] hand upon a[] youth" where he was neither acting in defense of self or others nor acting in order "to prevent an escape or serious injury to personnel or destruction of property." YSA 9.14(B)(6).[12]

---

[12] Appellant also argues that he was not given proper notice of the OII investigation or of the "cause" for DYRS's actions. Like the Superior Court, however, we are satisfied that the December 19, 2010, DYRS Memorandum informing Mr. Baldwin that he was being placed on noncontact status "pending the outcome of an investigation . . . into the incident that occurred at the Youth Services Center on December 17, 2010," was sufficient to apprise him that he was being investigated and to indicate why. Mr. Baldwin also has provided no authority for his argument that he was entitled to notice of the investigation as a matter of due process. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984) (explaining that due process does not require an agency to notify a target of an investigation because "an administrative investigation adjudicates no legal rights"). Further, Mr. Baldwin has acknowledged that he was provided with an advanced written notice of his proposed removal that cited, among other things, his violation of the use-of-force policy.

Appellant's argument (made for the first time on appeal) that he was denied his Confrontation Clause right to confront his accusers is equally unavailing. As the Superior Court explained, the Confrontation Clause pertains in criminal prosecutions, which the proceedings involved here were not.

For the foregoing reasons, the OEA Board's decision upholding appellant's termination is

*Affirmed.*